Exhibit 1

# ▉FOLEY

**FOLEY & LARDNER LLP**

**ATTORNEYS AT LAW**

321 NORTH CLARK STREET, SUITE 2800
CHICAGO, IL 60610-4764
312.832.4500 TEL
312.832.4700 FAX
foley.com

March 21, 2008

WRITER'S DIRECT LINE
312.832.5154
mbishop@foley.com EMAIL

CLIENT/MATTER NUMBER
091963-0101

**Via U.S. Mail**

Mr. Christopher T. French
739 Timber Ridge
Fontana, WI 53125

Lake Forest Partners, LLC
c/o Mr. Christopher T. French,
as its sole Managing Member
249 Market Square
Lake Forest, IL 60045

Re:   **Gen. Chain v. Lake Forest Partners, LLC, et al.,
Northern District of Illinois, Case No. 07 C 6317**

Dear Mr. French:

As we have previously discussed, Foley & Lardner LLP has terminated its representation of Lake Forest Partners, LLC ("Lake Forest") and you, Christopher T. French ("You" or "French"), personally. To that end, we appeared in Court yesterday, March 20, 2008 on a Motion for Leave to Withdraw as Counsel (the "Motion") in the above-captioned case (the "Case"). The Court continued the Motion to April 3, 2008 at 9:00 A.M., but indicated that the Motion would be granted subsequent to us providing you, personally and as Lake Forest's representative, with this letter as additional notice of the Case proceedings, and the potential consequences of the Case moving forward with Lake Forest and You unrepresented by counsel.

As we have discussed, the Plaintiff has issued Interrogatories, Requests for the Production of Documents, and Requests for Admissions (collectively, the "Discovery Requests"), which remain pending and require responses by April 9, 2008 (you have received copies of these documents previously). It is important that you respond timely to all of the pending Discovery Requests. Of particular importance are the pending Requests for Admissions which, if you fail to respond to by April 9, 2008, could result in all of the requests being deemed admitted, thus greatly impairing your defense in this case. In no uncertain terms, the Court has stated that regardless of whether Defendants are represented by counsel, there will be no extensions of time to respond to any pending discovery, nor will there be an extension of the discovery schedule currently in effect. The approaching deadlines regarding discovery and the Court's decision to maintain the current discovery schedule makes it imperative that you immediately retain other counsel.

I will continue to keep you apprised of the status of the pending Motion and with regard to any other proceedings in the case. However, if the Court grants the Motion, Foley &

BOSTON        JACKSONVILLE    NEW YORK        SAN FRANCISCO    TOKYO
BRUSSELS      LOS ANGELES     ORLANDO         SHANGHAI         WASHINGTON, D.C.
CENTURY CITY  MADISON         SACRAMENTO      SILICON VALLEY
CHICAGO       MIAMI           SAN DIEGO       TALLAHASSEE
DETROIT       MILWAUKEE       SAN DIEGO/DEL MAR  TAMPA

CHIC_2379456.2

# **:FOLEY**

FOLEY & LARDNER LLP

Mr. Christopher T. French
March 21, 2008
Page 2

Lardner LLP will no longer be involved and will not be able to provide continued updates regarding the Case proceedings. To best protect your interests and those of Lake Forest in this Case, I strongly encourage you to retain other counsel to appear on behalf of Lake Forest and You as soon as possible. Regardless, the Court has ordered that you appear at the next status hearing, April 3, 2008 at 9:00 A.M., either in person or through newly-retained counsel.

Please do not hesitate to contact me with any questions or concerns.

Sincerely,

Martin J. Bishop

cc:     Hon. Ronald A. Guzman,
        U.S. District Court for the Northern District of Illinois

Exhibit 2

**FILED**

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 1 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR. (USAF, Retired), | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 6317 |
| v. | ) ) ) | Judge Guzman |
| LAKE FOREST PARTNERS, LLC, CHRISTOPHER T. FRENCH, ALBERT J. MONTANO, and MARK D. WEISSMAN, M.D., Defendants. | ) ) ) ) ) ) | Magistrate Judge Mason |

## ANSWER TO COMPLAINT

Defendants Lake Forest Partners, LLC ("Lake Forest") and Christopher T. French, by and through their attorneys, Foley & Lardner LLP, answer the Complaint of General John T. Chain, Jr. ("Chain") as follows:

### SUMMARY

1.     In or about 2005, Royal Island, LLC entered into a Purchase and Sale Agreement, pursuant to which it would purchase a collection of three uninhabited islands located in the Commonwealth of the Bahamas known as "Royal Island" (the three islands are referred to herein collectively as the "Island"). Royal Island, LLC intended to develop the Island as an upscale luxury community. Defendant Lake Forest is a member of Royal Island, LLC. Defendants Montano, French and Weissman are members of Lake Forest.

**ANSWER:**    Lake Forest and French admit that Lake Forest is a member of Royal Island, LLC,

as the term "member" is defined in the operating agreement of Royal Island, LLC. Lake Forest

and French admit that Royal Island, LLC intended to purchase and develop three uninhabited

islands in the Commonwealth of the Bahamas (collectively known as "Royal Island"). Lake

Forest and French deny that Royal Island, LLC entered into a Purchase and Sale Agreement for

Royal Island. Lake Forest and French further state that Great Prarie Ventures, Inc. assigned a

CHIC_1747486.5

Purchase and Sale Agreement for Royal Island to Royal Island, LLC. Lake Forest and French

deny the remaining allegations in Paragraph 1.

>    2.    In 2005, Defendants solicited General Chain to invest in the development of the Island. Specifically, Defendants asked General Chain to loan $3.5 million to Lake Forest to fund Lake Forest's marketing and development of the Royal Island project.

**ANSWER:**    Lake Forest and French deny that they solicited Chain to invest in the

development of Royal Island, and deny that they asked Chain to loan Lake Forest $3,500,000 to

fund the marketing and development of Royal Island. Lake Forest and French further state that

Chain was introduced to the Defendants by John Borling, and that Chain loaned $3,500,000 to

Lake Forest for use by Lake Forest for its business activities, which included aspects of the

marketing and development of Royal Island. Lake Forest and French deny the remaining

allegations in Paragraph 2.

>    3.    Pursuant to the terms of two Loan Agreements, Lake Forest agreed to repay the loan amounts, plus interest, within a specified time period. In the event of default, an additional 3% rate of interest would be due on the outstanding amount. The loans were jointly and severally guaranteed by Lake Forest's principals -- *i.e.*, Defendants French, Montano and Weissman.

**ANSWER:**    Lake Forest and French admit that there were two executed contracts between

Chain and Lake Forest, each titled "Loan Agreement," one dated August 11, 2005 ("Loan 1"),

and another October 26, 2005 ("Loan 2," and collectively, the "Loans"). Lake Forest and French

admit that each of the Loans included a term for interest and repayment, and that each of the

Loans included a term whereby French, Montano, and Weissman provided a guarantee on the

repayment of Lake Forest's obligation to repay principal and interest. Lake Forest and French

deny the remaining allegations in Paragraph 3.

>    4.    As an additional incentive, Defendants promised General Chain that he would receive two home building sites on the Island, each worth between $2 million and $3 million.

2

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 4.  Lake Forest and

French further state that the Loans each contained a conditional term whereby Chain might

receive a home building site on Royal Island if the acquisition of Royal Island was achieved.

     5.    On or about August 18, 2006, Defendant Lake Forest notified
General Chain that it was unable to make repayment on the loans and that it was
no longer able to provide him with the building sites listed as additional interest
returns.  It is unknown what Defendants did with the $3.5 million that General
Chain loaned to Lake Forest, but none of it was repaid to General Chain.

**ANSWER:**   Lake Forest and French deny that Lake Forest notified Chain that it was unable to

make repayment on the loans and was no longer able to provide Chain with the building sites on

Royal Island.  Lake Forest and French further state that in a Memo dated August 18, 2006, sent

to Chain by French on behalf of Lake Forest, Lake Forest stated that it was experiencing

hardship, was in the process of exploring other financing sources and opportunities to assist in

meeting financial obligations to creditors, and that as a result of the hardship Lake Forest could

not commit to the home building sites at that time.  Lake Forest and French admit that none of

the $3,500,000 provided by Chain to Lake Forest was used to repay Chain.  Lake Forest and

French further state the $3,500,000 loaned to Lake Forest by Chain was used by Lake Forest for

its business activities, which included aspects of the marketing and development of Royal Island.

Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth

or falsity of the remaining allegations contained in Paragraph 5, which allegations are therefore

denied.

     6.    In addition to defaulting on the notes, Defendants did not have
authority to promise the two lots on the Island to General Chain and those
promises were made solely to induce General Chain to loan $3.5 million to Lake
Forest.

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 6.

     7.    Through this action, General Chain seeks to recover damages
against Defendants for the amounts owed to General Chain as a result of

CHIC_1747486.8

Defendants' breach of the loan agreements. In addition, General Chain seeks to recover the damages caused by Defendants' fraudulent misrepresentations.

**ANSWER:**    Lake Forest and French admit that Chain is seeking to recover damages against Defendants for alleged breaches of the Loans and alleged misrepresentations, but deny the merit of those allegations.

### Parties

8.    Plaintiff General John T. Chain, Jr. resides in Fort Worth, Texas and is a citizen of Texas. General Chain is 73 years old and is a retired United States Air Force General whose illustrious military career spanned 34 years and included serving as the Commander-In-Chief of the United States Strategic Air Command.

**ANSWER:**    Lake Forest and French admit that Chain is a retired United State Air Force General. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 8, which allegations are therefore denied.

9.    Defendant Lake Forest Partners, LLC is a Nevada corporation, with its principal place of business in Lake Forest, Illinois. For diversity purposes, Lake Forest is a citizen of Nevada and Illinois. Lake Forest has a majority ownership interest in Royal Island LLC, a Florida corporation.

**ANSWER:**    Lake Forest and French deny that Lake Forest Partners, LLC is a Nevada corporation, and state that Lake Forest Partners, LLC is a Nevada limited liability company. Lake Forest and French deny that Royal Island LLC is a Florida corporation, and state that Royal Island LLC is a Florida limited liability company. Lake Forest and French deny that Lake Forest has a majority ownership interest in Royal Island, LLC and further state that Lake Forest has a forty-nine percent (49.0%) interest in Royal Island, LLC. Lake Forest and French admit the remaining allegations in Paragraph 9.

10.    Defendant French resides in Fontana, Wisconsin and is a citizen of Wisconsin. At all times material to this lawsuit, French was a Principal of Lake Forest and a member of Royal Island, LLC.

4

CHIC_1747486.8

**ANSWER:**    Lake Forest and French admit that French resides in, and is a citizen of

Wisconsin. Lake Forest and French deny the remaining allegations in Paragraph 10.

> 11.    Defendant Montano resides within the Northern District of Illinois and is a citizen of Illinois. At all times material to this lawsuit, Montano was a Principal of Lake Forest.

**ANSWER:**    Upon information and belief, Lake Forest and French admit that Montano resides

within the Northern District of Illinois and is a citizen of Illinois. Lake Forest and French deny

the remaining allegations in Paragraph 11.

> 12.    Defendant Weissman resides within the Northern District of Illinois and is a citizen of Illinois. Weissman is a licensed physician. At all times material to this lawsuit, Weissman was a Principal of Lake Forest.

**ANSWER:**    Upon information and belief, Lake Forest and French admit that Weissman

resides within the Northern District of Illinois and is a citizen of Illinois. Lake Forest and French

deny the remaining allegations in Paragraph 12.

### Jurisdiction & Venue

> 13.    This is a civil action in which the United States District Court has original jurisdiction under the provisions of 28 U.S.C. § 1332(a) because Plaintiff and the Defendants are citizens of different states and because the amount in controversy exceeds $75,000.

**ANSWER:**    Lake Forest and French lack sufficient knowledge or information to form a belief

as to the truth or falsity of the allegation as it refers to Plaintiff's state of citizenship, and thus

whether there is complete diversity between the parties, which allegation is therefore denied.

Lake Forest and French admit the remaining allegations in Paragraph 13.

> 14.    Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendants reside in this judicial district and a substantial portion of the events or omissions giving rise to General Chain's claims occurred in this judicial district.

**ANSWER:**    Lake Forest and French admit that Defendant Lake Forest is a resident in the

Northern District of Illinois. Lake Forest and French deny that French is a resident in the

5

Northern District of Illinois. Upon information and belief, Lake Forest and French admit that

Montano and Weissman are residents in the Northern District of Illinois. Lake Forest and French

deny that venue is proper pursuant to 28 U.S.C. § 1391(a) in the Northern District of Illinois

based on the residence of Defendants. Lake Forest and French lack sufficient knowledge or

information to form a belief as to the truth or falsity of the remaining allegations contained in

Paragraph 14, but do not contest venue.

### Factual Background

15.    Royal Island, LLC owned an option to purchase the Island.

**ANSWER:**    Lake Forest and French admit the allegations in Paragraph 15. Lake Forest and

French further state that Royal Island, LLC did not own an option to purchase Royal Island at the

time the Loans were made.

16.    Development of the Island was marketed as an exclusive high-end
five star residential, golf, marina, and resort hotel development project, with a
target market of international high profile and high net worth individuals. The
planned development of the Island included over 200 single family residential lots
and homes; an 18-hole Greg Norman private signature championship golf course
and clubhouse; a 200-slip deep water marina capable of docking yachts up to 300
feet in length; and a 50-room villa style five-star hotel and casino.

**ANSWER:**    Lake Forest and French admit the allegations in Paragraph 16. Lake Forest and

French further state that the planned development of Royal Island changed over time.

17.    Lake Forest, through its principals, solicited investors relating to
the development of the Island.

**ANSWER:**    Lake Forest and French deny that Lake Forest solicited investors for the

development of Royal Island. Lake Forest and French further state that Lake Forest obtained

loans for use by Lake Forest for its business activities, which included aspects of the marketing

and development of Royal Island.

18.    In or about August 2005, Lake Forest solicited General Chain for
an investment in the development of the Island. As part of the solicitation,

6

Defendants provided General Chain with marketing materials prepared for him describing the development of the Island.

**ANSWER:**    Lake Forest and French deny that Lake Forest solicited Chain to invest in the development of Royal Island. Lake Forest and French admit that Chain was provided marketing materials related to the development of Royal Island. Lake Forest and French further state that John Borling introduced Chain to the Defendants, and that Chain made Loans to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Lake Forest and French deny the remaining allegations in Paragraph 18.

19.    Defendants asked General Chain to make an initial loan of $3 million to Lake Forest. To induce General Chain to make such a large investment, Defendants promised General Chain that in addition to a guaranteed high rate of return on his principal, Defendants would provide General Chain a parcel of property on the Island valued between $2 million and $3 million.

**ANSWER:**    Lake Forest and French admit that Chain and Lake Forest entered into Loan 1, which agreement provided that Chain would loan $3,000,000 to Lake Forest. Lake Forest and French deny that Chain was promised a guaranteed high rate of return or a home building site on Royal Island. Lake Forest and French further state that Loan 1 included a term for interest to be paid on the principal upon repayment, and a conditional term whereby Chain might receive a home building site on Royal Island if acquisition of Royal Island was achieved. Lake Forest and French deny the remaining allegations in Paragraph 19.

20.    On or about August 11, 2005, General Chain agreed to loan Lake Forest $3 million pursuant to the terms of a Loan Agreement ("Loan Agreement 1"). A true and correct copy of Loan Agreement 1 is attached hereto as Exhibit 1. Pursuant to Loan Agreement 1, Lake Forest agreed to repay the $3 million loan amount, plus interest of twenty percent per annum (20%), on or before August 14, 2006. In the event of default, Lake Forest agreed to pay an additional 3% rate of interest on the outstanding amount. Loan Agreement 1 also provided that General Chain would receive a home building site on the Island worth between $2 million and $3 million. Defendants French, Montano and Weissman guaranteed Lake Forest's obligations under Loan Agreement 1.

7

**ANSWER:**   Lake Forest and French deny that Loan 1 provided that Chain would receive a home building site on Royal Island, and deny that French, Montano, and Weissman guaranteed Lake Forest's obligations pursuant to Loan 1. Lake Forest and French further state that Loan 1 included a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved, and state that Loan 1 included a term whereby French, Montano, and Weissman provided a guarantee on the repayment of the $3,000,000 loan plus the interest due and any collection costs incurred in collecting the $3,000,000 and interest, but did not guarantee any other obligations of Lake Forest. Lake Forest and French admit the remaining allegations in Paragraph 20.

21.     Between August 10 and October 25, 2005, Defendants asked General Chain to loan additional sums to Lake Forest to fund the acquisition of the Island. Like the first loan, in addition to interest on the principal amount of the loan, Defendants agreed to provide General Chain another parcel of land on the Island.

**ANSWER:**   Lake Forest and French deny that Defendants asked Chain to fund the acquisition of Royal Island. Lake Forest and French further state that Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Lake Forest and French admit that Lake Forest and Chain entered into Loan 2, which agreement included an identical conditional term to Loan 1 whereby Chain might receive a home building site on Royal Island, if the acquisition of Royal Island was achieved. Lake Forest and French deny the remaining allegations in Paragraph 21.

22.     On or about October 26, 2005, General Chain loaned Lake Forest an additional $500,000 pursuant to the terms of a Loan Agreement ("Loan Agreement 2"). A true and correct copy of the Loan Agreement 2 is attached hereto as Exhibit 2. Under the terms of Loan Agreement 2, Lake Forest agreed to repay the $500,000 loan amount, plus interest of ten percent per annum (10%), on or before January 26, 2006. In the event of default, Lake Forest agreed to pay an additional 3% rate of interest on the outstanding amount. Loan Agreement 2 also provided that General Chain would receive a home building site on the Island

8

worth between $2 million and $3 million. Defendants French, Montano and Weissman guaranteed Lake Forest's obligations under Loan Agreement 2.

**ANSWER:**    Lake Forest and French deny that Loan 2 provided that Chain would receive a

home building site on Royal Island, and deny that French, Montano, and Weissman guaranteed

Lake Forest's obligations pursuant to Loan 2. Lake Forest and French further state that Loan 2

included a conditional term whereby Chain might receive a home building site on Royal Island if

the acquisition of Royal Island was achieved, and state that Loan 2 included a term whereby

French, Montano, and Weissman provided a guarantee on the repayment of the $500,000 loan

plus the interest due and any collection costs incurred in collecting the $500,000 and interest, but

did not guarantee any other obligations of Lake Forest. Lake Forest and French admit the

remaining allegations in Paragraph 22.

     23.    On January 26, 2006, Lake Forest defaulted on its obligations to repay General Chain $500,000, plus interest, as set forth in Loan Agreement 2.

**ANSWER:**    Lake Forest and French admit that Lake Forest did not repay Chain $500,000,

plus interest, on January 26, 2006.

     24.    On August 14, 2006, Lake Forest defaulted on its obligations to repay General Chain $3 million, plus interest, as set forth in Loan Agreement 1.

**ANSWER:**    Lake Forest and French admit that Lake Forest did not repay Chain $3,000,000,

plus interest, on August 14, 2006.

     25.    On or about August 18, 2006, French notified General Chain in writing that Lake Forest was no longer a direct participant in the ownership, management or development of the Royal Island project. According to Defendant French, as a result of this change in circumstances, Lake Forest was experiencing significant hardship and was exploring other financial sources and opportunities to assist it in meeting its financial obligations to Lake Forest's creditors, including General Chain. In addition, Defendant French notified General Chain that Lake Forest was no longer able to commit to its promise to provide General Chain with two building lot sites on the Island.

9

**ANSWER:**   Lake Forest and French admit the allegations in Paragraph 25. Lake Forest and French further state that French notified Chain that the condition precedent to Chain receiving two home building sites on Royal Island had not been met, and that Lake Forest was not able to commit to non-monetary considerations at that time.

26.    On or about April 24, 2007, Defendant French notified General Chain by letter that Lake Forest continued to experience financial set-backs that were preventing Lake Forest and its principals from satisfying its financial obligations to General Chain.  Defendant French requested General Chain's patience as Lake Forest implemented changes that would improve Lake Forest's financial outlook. French informed General Chain that another person would be contacting him within two weeks to discuss the status of the Loan Agreements and to implement a repayment plan.

**ANSWER:**    Lake Forest and French admit that French sent a letter to Chain dated April 24, 2007, admit that the letter stated that Lake Forest had suffered setbacks which affected its ability to satisfy its financial obligations to Chain, and admit that the letter stated that Chain would be contacted by a representative of Lake Forest to discuss the current and future status of the Loans and to work with Chain to implement a plan to pay down Lake Forest's financial obligation. Lake Forest and Chain deny the remaining allegations in Paragraph 26.

27.    Thereafter, nobody contacted General Chain to implement a payment plan.  General Chain has demanded that Defendants perform their obligations under Loan Agreement 1 and Loan Agreement 2 and the individual guarantees of the Loan Agreements.

**ANSWER:**    Lake Forest and French admit that Chain has made demands on each of them. Lake Forest and French deny that they did not contact Chain regarding repayment of the Loans. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 27, which allegations are therefore denied.

28.    Despite demands by General Chain, Defendants Lake Forest, French, Montano and Weissman have failed to pay him any amounts due and owing on Loan Agreement 1 and Loan Agreement 2.

CHIC_1747486.8

**ANSWER:**   Lake Forest and French admit the allegations in Paragraph 28 as they pertain to Lake Forest and French. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 28 as they pertain to Montano and Weissman, which allegations are therefore denied.

### Count I – Breach of Contract

29.   General Chain realleges and incorporates Paragraphs 1 through 28, inclusive, as if fully set forth herein.

**ANSWER:**   Lake Forest and French reallege and incorporate their answers to Paragraphs 1 through 28, inclusive, as if fully set forth herein.

30.   Loan Agreement 1 is a valid and enforceable agreement.

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 30.

31.   General Chain performed all of his obligations under Loan Agreement 1.

**ANSWER:**   Lake Forest and French admit the allegations in Paragraph 31.

32.   Defendants Lake Forest, Weissman, Montano, and French breached their agreement by failing to repay General Chain the $3 million, plus interest, due on Loan Agreement 1.

**ANSWER:**   Lake Forest and French admit the allegations in Paragraph 32 as they pertain to Lake Forest and French. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 as they pertain to Montano and Weissman, which allegations are therefore denied.

33.   Defendants further breached Loan Agreement 1 by advising that they could not provide General Chain with a lot on the Island worth between $2 million and $3 million.

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 33.

34.   General Chain has been damaged by Defendants' breach of Loan Agreement 1.

11

CHIC_1747486.8

**ANSWER:**    Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 34, which allegations are therefore denied.

### Count II – Breach of Contract

35.    General Chain realleges and incorporates Paragraphs 1 through 28, inclusive, as if fully set forth herein.

**ANSWER:**    Lake Forest and French reallege and incorporate their answers to Paragraphs 1 through 28, inclusive, as if fully set forth herein.

36.    Loan Agreement 2 is a valid and enforceable agreement.

**ANSWER:**    Lake Forest and French deny the allegations in Paragraph 36.

37.    General Chain performed all of his obligations under Loan Agreement 2.

**ANSWER:**    Lake Forest and French admit the allegations in Paragraph 37.

38.    Defendants Lake Forest, Weissman, Montano, and French breached their agreement by failing to repay General Chain the $500,000, plus interest, due on Loan Agreement 2. As a result, General Chain has suffered damages of at least $3.5 million.

**ANSWER:**    Lake Forest and French admit that they did not pay Chain $500,000, plus interest, due on Loan 2. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 38, which allegations are therefore denied.

39.    Defendants further breach[ed] Loan Agreement 2 by advising that they could not provide General Chain with a lot on the Island worth between $2 million and $3 million.

**ANSWER:**    Lake Forest and French deny the allegations in Paragraph 39.

40.    General Chain has been damaged by Defendants' breach of Loan Agreement 2.

12

**ANSWER:**   Lake Forest and French lack sufficient knowledge or information to form a belief

as to the truth or falsity of the allegations contained in Paragraph 40, which allegations are

therefore denied.

### Count III – Common Law Fraud

41.    General Chain realleges and incorporates Paragraphs 1 through 40,
inclusive, as if fully set forth herein.

**ANSWER:**   Lake Forest and French reallege and incorporate their answers to Paragraphs 1

through 40, inclusive, as if fully set forth herein.

42.    To induce General Chain to loan $3 million to Lake Forest,
Defendants represented that in addition to interest on the $3 million, Lake Forest
would provide General Chain a home building site on the Island that had a value
of between $2 million and $3 million after the Island was purchased.

**ANSWER:**   Lake Forest and French admit that Chain and Lake Forest entered into Loan 1,

which agreement provided that Chain would loan $3,000,000 to Lake Forest. Lake Forest and

French deny that Chain was induced to make a loan to Lake Forest, and deny that Lake Forest or

French represented that a home building site on Royal Island would be provided to Chain. Lake

Forest and French further state that Loan 1 included a term for interest on the principal, and a

conditional term whereby Chain might receive a home building site on Royal Island if the

acquisition of Royal Island was achieved. Lake Forest and French deny the remaining

allegations in Paragraph 42.

43.    Similarly, to induce General Chain to loan them an additional
$500,000, Defendants represented to General Chain that in addition to interest on
the $500,000, Lake Forest would provide General Chain a home building site on
the Island that had a value between $2 million and $3 million once the Island was
acquired.

**ANSWER:**   Lake Forest and French admit that Chain and Lake Forest entered into Loan 2,

which agreement provided that Chain would loan $500,000 to Lake Forest. Lake Forest and

French deny that Chain was induced to make a loan to Lake Forest, and deny that Lake Forest or

13

French represented that a home building site on Royal Island would be provided to Chain. Lake

Forest and French further state that Loan 2 included a term for interest on the principal, and a

conditional term whereby Chain might receive a home building site on Royal Island if the

acquisition of Royal Island was achieved. Lake Forest and French deny the remaining

allegations in Paragraph 43.

      44.    General Chain relied on Defendants' promises to provide him with
two multi-million dollar lots on the Island, and lent Lake Forest $3.5 million.

**ANSWER:**   Lake Forest and French admit that Chain loaned $3,500,000 to Lake Forest. Lake

Forest and French lack sufficient knowledge or information to form a belief as to the truth or

falsity of the remaining allegations contained in Paragraph 44, which allegations are therefore

denied.

      45.    General Chain's reliance was reasonable.

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 45.

      46.    The representations made by Defendants were false because at the
time Loan Agreement 1 and Loan Agreement 2 were presented to General Chain,
Lake Forest did not have the authority to promise to give General Chain lots on
the Island.

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 46. Lake Forest and

French further state that the Loans provide a conditional term whereby Chain might receive a

home building site on Royal Island, if the acquisition of Royal Island was achieved; the

conditional term made clear, and Chain had notice, that at the time of the Loans, the acquisition

of Royal Island had not been achieved by any of the parties to the Loans, and thus the statements

were forward-looking expressions of intent.

      47.    Defendants knew that the representations concerning the two lots
were false at the time they were made and made those representations for the
purpose of inducing General Chain to loan Lake Forest a total of $3.5 million.

**ANSWER:**   Lake Forest and French deny the allegations in Paragraph 47.

14

48.     As a proximate cause of his reliance upon the misrepresentations of Defendants, General Chain has been damaged because he would not have loaned $3.5 million to Lake Forest if Defendants had not promised to provide him with the lots on the Island.

**ANSWER:**   Lake Forest and French lack sufficient knowledge or information to form a belief

as to the truth or falsity of the allegations contained in Paragraph 48, which allegations are

therefore denied.

### Jury Demand

49.     Plaintiff demands a trial by jury of all facts and claims presented by this Complaint that are so triable.

**ANSWER:**   Lake Forest and French admit the allegations in Paragraph 49.

### AFFIRMATIVE DEFENSES

Lake Forest and French assert the following affirmative defenses in response to

the Complaint:

### First Affirmative Defense
### (Failure to Plead a Condition Precedent)

Plaintiff has failed to plead a condition precedent to performance of certain

obligations pursuant to the Loans.  Specifically, each of the Loans provides a conditional term

whereby Chain might receive a home building site on Royal Island, if the acquisition of Royal

Island is achieved.  Nowhere in the Complaint does Plaintiff plead that the acquisition of Royal

Island was achieved, a fact necessary to the relief sought.

### Second Affirmative Defense
### (Indefinite Terms)

Certain provisions of the Loans are indefinite, unclear, and do not provide the

court with a means of determining the intent of the parties.  The essential terms are so uncertain

15

that there is no basis for deciding whether the agreement has been kept or broken. Where the Loans are so indefinite, they are unenforceable, and there can be no breach.

### Third Affirmative Defense
### (Failure to State a Claim Upon Which Relief May be Granted)

Plaintiff's claim for breach of contract regarding the home building sites on Royal Island, and Plaintiff's fraud claim in its entirety, both fail to state a claim upon which relief may be granted. Defendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans had acquired Royal Island. Defendants' representations and the terms in the Loans regarding Plaintiff's receipt of home building sites on Royal Island were conditioned upon a future event which did not occur. The failure of the condition to occur cannot support any breaches of the Loans, and the conditional nature of the event precludes any claim for fraud.

16

CHIC_1747486.8

WHEREFORE, Defendants Lake Forest Partners, LLC and Christopher T. French

pray that this Court enter a judgment in their favor, awarding them costs, attorneys' fees, and

providing them with such other relief as this Court deems just and proper.

Dated: February 11, 2008                    Respectfully submitted,

                                            LAKE FOREST PARTNERS, LLC and
                                            CHRISTOPHER T. FRENCH


                                            By: /s/ Martin J. Bishop
                                                One of their attorneys

Martin J. Bishop (No. 06269425)
Daniel A. Dingerson (No. 6282754)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL 60610-4764
312-832-4500
312-832-4700 Fax

CHIC_1747486.8

Exhibit 3

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GENERAL JOHN T. CHAIN, JR.     )
(USAF, Retired),     )
     )
        Plaintiff,     )     Case No.  07 C 6317
     )
v.     )     Honorable Ronald A. Guzman
     )
LAKE FOREST PARTNERS, LLC,     )
 a Nevada Corporation; CHRISTOPHER     )
T. FRENCH, ALBERT J. MONTANO     )
and MARK D. WEISSMAN, M.D.,     )
     )
        Defendants.     )

### PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR THE PRODUCTION OF DOCUMENTS (SET 1) TO DEFENDANTS LAKE FOREST PARTNERS, LLC AND CHRISTOPHER T. FRENCH

General John T. Chain, Jr. ("General Chain"), by his attorneys, and pursuant to

Fed. R. Civ. P. 26, 33 and 34, directs the following Interrogatories and Requests for the

Production of Documents to Defendants Lake Forest Partners, LLC ("Lake Forest") and

Christopher T. French ("French") to be answered fully and completely under oath within

30 days, or no later than April 10, 2008.

## DEFINITIONS

The defined terms used herein shall have the same meaning as the defined terms

used in the Complaint, filed on or about November 7, 2007.

## INTERROGATORIES

1.     Identify each and every person who provided information that was used in

the preparation of the answers to these Interrogatories and Request for the Production of

Documents, stating each person's name, address, telephone number and a description of the information provided.

2.      Identify each and every person who Lake Forest and/or French may call as a witness at any hearing or trial relating to this case, stating each person's name, address, telephone number and a description of the testimony each person would provide.

3.      Identify each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), identifying the name of the financial institution, the address of the financial institution, the name of the account holder, the account numbers and the purpose of each account.

4.      Identify each and every use of the money lent by General Chain to Lake Forest, identifying the amount of each expenditure that was made in whole, or in part, with money lent by General Chain, the date of the expenditure, the nature of the expenditure, the recipient of the expenditure, and the purpose of the expenditure. This interrogatory specifically requires French and Lake Forest to trace each and every dollar that General Chain lent to Lake Forest.

5.      Identify each and every person or entity that has been offered or promised (whether such offers were contingent or not) a lot or lots on Royal Island. For each such offer or promise, state the name of each offeree, the date of each offer, whether the offer was in writing or oral, the terms of the offer or promise, whether the offer or promise was accepted and the date the offer or promise was accepted.

6.      Has French and/or Lake Forest been contacted by any law enforcement agency regarding their solicitations for loans and/or investments in any real estate

projects, including, but not limited to, the Royal Island project? If the answer is anything other than an unqualified "no," then for each such contact, state the date of the contact, the agency making contact and the information provided by French and/or Lake Forest to all law enforcement agencies.

7.    State with particularity each and every fact that supports Lake Forest's and French's claim that they had authority to promise (even on a contingent basis) General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

8.    Was Lake Forest ever party to an agreement or agreements whereby it would acquire Royal Island? If the answer is anything other than an unqualified no, then state the parties to the agreement(s), the date of the agreement, whether the agreement(s) was (were) in writing or oral, and the terms of the agreement(s).

9.    State with particularity each and every fact that supports Lake Forest's and French's claim that Lake Forest did not ask General Chain to make an initial loan of $3 million to Lake Forest.

10.    State with particularity each and every fact that supports Lake Forest's and French's claim that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint, including the date(s) of General Chain's offer(s), the person(s) to whom General Chain allegedly made the offer(s), whether the offer(s) were in writing or oral, and the terms of the offer(s).

11.    State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

3

12.     State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

13.     Identify all persons or entities that are creditors of Lake Forest, French, GPVI and/or any other entities in which French has an ownership interest. For each creditor identified, state the name of the creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

14.     Was any of the money that Lake Forest obtained from General Chain used to pay any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI? If the answer is anything other than an unqualified "no," then state the name of the lender/investor, the amount of money that was repaid to the lender/investor, the date of repayment of the lender/investor, the method of payment (*i.e.*, cash, check, wire transfer, etc.), and the financial institution from which the money was used to pay the lender/investor.

15.     Identify each and every fact that supports your claim that the acquisition of Royal Island was not achieved.

16.     Identify each and every term of Loan Agreement 1 and Loan Agreement 2 that you claim is "indefinite, unclear and do not provide the court with the means of determining the intent of the parties." For each such term, state: (1) your interpretation of such term and what you believe was the intent of such term; and (2) the person who drafted each term.

4

17.     Identify the person or persons that had any role whatsoever in drafting Loan Agreements 1 and 2, stating each person's name, address, telephone number, and role in drafting Loan Agreement 1 and 2.

18.     Identify each and every fact that supports your Second Affirmative Defense.

19.     Identify each and every fact that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

20.     Is it your contention and/or belief that any "of the Defendants or parties to the Loans" held a contract and/or option to purchase Royal Island?  If the answer to this question is anything other than an unqualified no, then identify the date of the contract/option agreement, the parties to the contract/option agreement, whether the contract/option agreement was written or oral, and the terms of the contract/option agreement.

21.     Is it your contention that Lake Forest, French, GPVI and/or any other entity affiliated with French is not entitled to any lots on Royal Island?  If the answer is anything other than an unqualified "yes," then identify each and every fact for your claim that Lake Forest, French, GPVI and/or any other entity affiliate with French is or are entitled to lots on Royal Island and state how many lots each such individual or entity is entitled to.

22.     Identify each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party.  For each such lawsuit and arbitration, identify the parties to the proceeding, the tribunal in which the proceeding is or was pending, the nature of the litigation and whether a judgment or award has been entered.

5

23.     If any of your answers to any of Plaintiff's Requests for Admission (Set 2) served on March 10, 2008, constitute anything other than an unqualified admission, state with particularity and in detail the complete factual basis for your refusal to give an unqualified admission.  Your answer should include, without limitation, an identification of every witness, document, or other tangible item that supports your refusal to give an unqualified admission to the particular Request for Admission.

## DOCUMENT REQUESTS

1.     Produce all documents that are referred to or were used in any manner whatsoever to answer the foregoing interrogatories and/or answering the Complaint.

2.     Produce all documents that Lake Forest and/or French will use at any trial or hearing of this matter.

3.     Produce any and all documents relating to each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), for the time period January 1, 2004 to the present, including, all account statements, checks, cancelled checks, ledgers, check registers, and accounting records.  This request specifically includes a request for all electronically stored information and General Chain requests that Lake Forest and French produce the native files for all such electronically stored information.

4.     Produce any and all documents relating to each and every use of the money lent by General Chain to Lake Forest.

5.     Produce any and all documents relating to any and all communications between Lake Forest (and its agents) and General Chain.

6

6.     Produce any and all documents relating to each and every person or entity that has been offered or promised (whether such offer was contingent or not) a lot or lots on Royal Island by Lake Forest, French, GPVI and/or persons acting on behalf of Lake Forest, French and/or GPVI.

7.     Produce any and all documents relating to any communications between French and/or Lake Forest (and their agents or attorneys), on the one hand, and any law enforcement agency, on the other hand, regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project.

8.     Produce any and all documents relating to Lake Forest's and French's claim that they had authority to promise General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

9.     Produce any and all documents relating to the acquisition of Royal Island.

10.    Produce any and all documents relating to the solicitation of any and all loans to Lake Forest and/or GPVI.

11.    Produce any and all documents relating to the solicitation of any and all investments in Lake Forest and/or GPVI or any real estate projects that are or were affiliated in any way with Lake Forest, French and/or GPVI.

12.    Produce any and all documents relating to any and all communications between Lake Forest, French and/or GPVI (and their agents and attorneys), on the one hand, and any and all persons and/or entities that loaned money to Lake Forest, GPVI and/or French and/or invested money in Lake Forest, GPVI and/or any real estate project affiliated in any way whatsoever with Lake Forest and/or GPVI.

7

13.    Produce any and all documents regarding all agreements to which Lake Forest, French, and/or GPVI are or were a party that in any way relate to Royal Island.

14.    Produce any and all documents that support your contention that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint.

15.    Produce any and all documents that support Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

16.    Produce any and all documents that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

17.    Produce any and all documents that refer or relate to any and all creditors of Lake Forest, French, GPVI and/or any other entities in which French has or had an ownership interest, including, but not limited to, documents relating to the identity of each creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

18.    Produce any and all documents relating to the repayment by (or on behalf of) Lake Forest, French, GPVI and/or any entity affiliated with French to any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI.

19.    Produce any and all documents that relate to the proposed and/or actual acquisition of Royal Island.

8

20.    Produce any and all documents that support your contention that the acquisition of Royal Island was not achieved.

21.    Produce any and all documents that support your contention that certain terms of Loan Agreement 1 and Loan Agreement 2 are "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."

22.    Produce any and all documents relating to the drafting of Loan Agreements 1 and 2.

23.    Produce any and all documents that support your Second Affirmative Defense.

24.    Produce any and all documents that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

25.    Produce any and all documents relating to any and all disputes between, Lake Forest, French, GPVI and/or any other entity affiliated with French, on the one hand, and Duane Truitt, on the other hand.

26.    Produce any and all documents relating to whether Lake Forest, French, GPVI and/or any other entity affiliate with French has or have ever been entitled to lots on Royal Island and state how many lots each such person and/or entity is entitled to.

27.    Produce any and all documents relating to each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party, including, but not limited to, all pleadings, discovery, produced documents and deposition transcripts.

28.    Produce any and all deposition transcripts, recorded statements, transcripts of testimony of French, Weissman and/or Montano.

9

Dated: March 10, 2008

GENERAL JOHN T. CHAIN, JR.

By: _____
One of His Attorneys

Jonathan M. Cyrluk
Henry Baskerville
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Phone: 312-338-0200
Fax:    312-338-0070
cyrlukj@stetlerandduffy.com
hbasker@stetlerandduffy.com

## CERTIFICATE OF SERVICE

I, Henry M. Baskerville, an attorney, certify under penalty of perjury that I caused a copy of the foregoing **Plaintiff's Interrogatories and Requests for the Production of Documents (Set 1) to Defendants Lake Forest Partners, LLC and Christopher T. French** to be served on:

> Martin J. Bishop
> Daniel A. Dingerson
> Foley & Lardner, LLP
> 321 N. Clark Street, Suite 2800
> Chicago, IL 60610

by facsimile transmission to 312-832-4700 and email delivery, and

> Albert J. Montano
> 1990 Skokie Boulevard
> Highland Park, IL 60035
>
> Scott Weissman
> 3238 North Lakewood
> Chicago, IL 60657

by U.S. Mail, First Class Postage Prepaid, this 10th day of March, 2008.

_____
Henry M. Baskerville

11

Exhibit 4

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GENERAL JOHN T. CHAIN, JR.    )
(USAF, Retired),                   )
                                    )
          Plaintiff,       )    Case No.  07 C 6317
                                    )
v.                          )    Honorable Ronald A. Guzman
                                    )
LAKE FOREST PARTNERS, LLC,   )
 a Nevada Corporation; CHRISTOPHER  )
T. FRENCH, ALBERT J. MONTANO   )
and MARK D. WEISSMAN, M.D.,    )
                                    )
         Defendants.      )

## PLAINTIFF'S REQUESTS FOR ADMISSIONS (SET 2) TO DEFENDANTS LAKE FOREST PARTNERS, LLC AND CHRISTOPHER T. FRENCH

General John T. Chain, Jr. ("General Chain"), by his attorneys, and pursuant to

Fed. R. Civ. P. 36, directs the following Requests for Admissions to Lake Forest,

LLC ("Lake Forest") and Christopher T. French ("French") to be answered fully and

completely under oath within 30 days, or no later than April 10, 2008.

## DEFINITIONS

The defined terms used herein shall have the same meaning as the defined terms

used in the Complaint, filed on or about November 7, 2007.

## REQUESTS FOR ADMISSIONS

1.    Admit that the document attached hereto as Exhibit 1 is a true and correct

copy of an agreement entered into between General Chain, on the one hand, and Lake

Forest, French, Albert Montano and Scott Weissman, on the other hand, on or about

August 11, 2005 ("Loan Agreement 1").

2.    Admit that Lake Forest (including, its agents and attorneys) drafted Loan Agreement 1.

3.    Admit that General Chain loaned $3 million to Lake Forest on or about August 11, 2005.

4.    Admit that Lake Forest agreed to repay General Chain the $3 million he loaned to Lake Forest pursuant to Loan Agreement 1 on or before August 14, 2006.

5.    Admit that Lake Forest agreed to pay interest of 20% per annum on the $3 million General Chain lent to Lake Forest pursuant to Loan Agreement 1.

6.    Admit that Lake Forest agreed to repay General Chain the principal amount of $3 million, plus 20% interest, plus an additional 3% interest in the event Lake Forest defaulted under Loan Agreement 1.

7.    Admit that Lake Forest has not paid any amounts to General Chain relating to Loan Agreement 1.

8.    Admit that Lake Forest has not repaid any portion of the $3 million General Chain let to Lake Forest on or about August 11, 2005.

9.    Admit that the document attached hereto as Exhibit 2 is a true and correct copy of an agreement entered into between General Chain, on the one hand, and Lake Forest, French, Albert Montano and Scott Weissman, on the other hand, on or about October 26, 2005 ("Loan Agreement 2").

10.    Admit that Lake Forest (including, its agents and attorneys) drafted Loan Agreement 2.

11.    Admit that General Chain loaned $500,000 to Lake Forest on or about October 26, 2005.

2

12.    Admit that Lake Forest agreed to repay General Chain the $500,000 he loaned to Lake Forest pursuant to Loan Agreement 2 on or before January 26, 2006.

13.    Admit that Lake Forest agreed to pay interest of 10% per 90 days on the $500,000 General Chain lent to Lake Forest pursuant to Loan Agreement 2.

14.    Admit that Lake Forest agreed to repay General Chain the principal amount of $500,000, plus 10% interest per 90 days, plus an additional 3% interest in the event Lake Forest defaulted under Loan Agreement 2.

15.    Admit that Lake Forest has not paid any amounts to General Chain relating to Loan Agreement 2.

16.    Admit that Lake Forest has not repaid any portion of the $500,000 General Chain lent to Lake Forest on or about October 26, 2005.

17.    Admit that Lake Forest never had any direct rights to any lots on Royal Island.

18.    Admit that Lake Forest never was party to a written agreement to acquire Royal Island.

19.    Admit that Lake Forest is a member of Royal Island, LLC.

20.    Admit that Royal Island, LLC is a member of a partnership that owns Royal Island.

21.    Admit that Royal Island was acquired pursuant to an agreement that Great Prairie Ventures, Inc. ("GPVI") assigned to Royal Island, LLC.

22.    Admit that Royal Island, LLC is entitled to more than two lots on Royal Island.

23.    Admit that French, Lake Forest and/or GPVI offered lots on Royal Island to other persons and entities besides General Chain.

3

Dated: March 10, 2008                    GENERAL JOHN T. CHAIN, JR.


                                         By: _____
                                             One of His Attorneys

Jonathan M. Cyrluk
Henry Baskerville
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Phone: 312-338-0200
Fax:    312-338-0070
cyrlukj@stetlerandduffy.com
hbasker@stetlerandduffy.com

## CERTIFICATE OF SERVICE

I, Henry M. Baskerville, an attorney, certify under penalty of perjury that I caused a copy of the foregoing **Plaintiff's Requests for Admissions (Set 2) to Defendants Lake Forest Partners, LLC and Christopher T. French** to be served on:

> Martin J. Bishop
> Daniel A. Dingerson
> Foley & Lardner, LLP
> 321 N. Clark Street, Suite 2800
> Chicago, IL 60610

by facsimile transmission to 312-832-4700 and email delivery, and

> Albert J. Montano
> 1990 Skokie Boulevard
> Highland Park, IL 60035

> Scott Weissman
> 3238 North Lakewood
> Chicago, IL 60657

by U.S. Mail, First Class Postage Prepaid, this 10th day of March, 2008.

_____
Henry M. Baskerville

5

Exhibit 1

## LOAN AGREEMENT

This Loan Agreement is made and executed this 11th day of August, 2005 by and among  John T. Chain, Jr. residing at 142 Spring Creek  Lane, Edwards, Colorado 81652, hereinafter "Lender", Mark D. Weissman, individually, hereinafter referred to as "Weissman", Albert J. Montano, individually, hereinafter referred to as "Montano", Christopher T. French, individually, hereinafter referred to as "French",  and collectively as Lake Forest Partners, LLC, Hereinafter referred to as "LFP".

RECITALS:

WHEREAS Lender is willing to loan LFP Three Million and no/100 Dollars ($3,000,000.00) and Lake Forest Partners, LLC is desirous of borrowing Three Million and no/100 Dollars ($3,000,000.00) from Lender.

WHEREAS LFP agrees to repay Lender said Three Million and no/100 Dollars ($3,000,000.00) pursuant to the terms and conditions set forth below.

WHEREAS as an inducement for Lender to loan LFP Three Million and no/100 Dollars ($3,000,000.00) so LFP can use such monies to fund the partnership activities to include aspects of Royal Island marketing and development; Weissman, Montano and French hereby guarantee the payment of such amount in full, including principal and interest as set forth below.

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1. The recitals set forth above are hereby incorporated by reference and made a part hereof as if fully rewritten herein.

2. Lender will, upon execution of this Agreement, loan LFP $3,000,000.00 (the "Loan"). LFP agrees to repay the Loan plus Interest set at 20% for the term of the Loan (the "Interest") pursuant to the terms set forth herein.

3. The parties hereto acknowledge and agree that the Loan is unsecured. However, Weissman, Montano and French hereby personally, irrevocably, absolutely, unconditionally, jointly and severally guarantee the timely repayment of the Loan plus the Interest due on the Loan and any collection costs incurred by Lender in collecting any such amounts.

4. This Loan Agreement is a legal agreement, intended to be binding upon each of the parties hereto.

5. The term of the Loan shall be for 1 year from the date hereof, due and payable in full plus Interest on or before August 14, 2006.

6. In the event of default, interest shall be payable on the outstanding amount of the Loan at the Interest rate plus three percent (3%).

7. Once the acquisition of Royal Island is achieved, then the Lender will Receive a home building site (worth a list price of $2 to $3 Million) as Additional interest return. The site shall be a "standard" site as defined in the Purchase and Sale Agreement.

8.    LFP promises to pay all costs of collection in case payment

shall not be made at maturity; and further promises, in case suit is

instituted to collect the Loan or the Interest, or any portion thereof,

to pay such reasonable attorney's fees in such suit.

9.    This Loan Agreement shall be interpreted in accordance with Illinois

law without regard to the provisions of the conflicts of law.

10.    Weissman's address for purposes of any notifications shall be 3238

North Lakewood, Chicago, IL 60659, Telephone 773-348-0639.

Montano's address for notifications shall be 249 Market Square,

Lake Forest, IL 60045. Office telephone 847-234-3434. French's

address for notification shall be c/o Tec Development International,

27 North Wacker Drive, Suite 410, Chicago, IL 60606. Telephone

773-320-9530. LFP is the same as Montano's.

11.    Wiring instructions: Lake Forest Partners LLC , Harris Bank,

824 North Western Ave., Lake Forest, IL 60045. ABA #

071025661  Account # 2910373329.

12.    This Loan Agreement constitutes the entire agreement among the

parties hereto pertaining to the subject matter contained herein

and may not be altered or amended or nor may any provision

hereof be waived except by an agreement in writing executed by

each of the parties hereto.

In witness whereof, the undersigned have executed this Agreement as of the date set forth above.

By _____          By _____
John T. Chain, Jr.                          Albert J. Montano


By _____          By _____
Mark D. Weissman                          Christopher T. French


By _____
Lake Forest Partners, LLC, Managing Member

File: Chain Loan agreement final client

Exhibit 2

## LOAN AGREEMENT

This Loan Agreement is made and executed this 26th day of Oct, 2005 by and among  John T. Chain, Jr. residing at 142 Spring Creek  Lane, Edwards, Colorado 81652, hereinafter "Lender", Mark D. Weissman, individually, hereinafter referred to as "Weissman", Albert J. Montano, individually, hereinafter referred to as "Montano", Christopher T. French, individually, hereinafter referred to as "French",  and collectively as Lake Forest Partners, LLC, Hereinafter referred to as "LFP".

RECITALS:

WHEREAS Lender is willing to loan LFP Five Hundred Thousand and no/100  Dollars ($500,000.00) and Lake Forest Partners, LLC is desirous of borrowing Five Hundred Thousand and no/100 Dollars ($500,000.00) from Lender.

WHEREAS LFP agrees to repay Lender said Five Hundred Thousand and  no/100 Dollars ($500,000.00) pursuant to the terms and conditions set forth  below.

WHEREAS as an inducement for Lender to loan LFP Five Hundred Thousand and no/100 Dollars ($500,000.00) so LFP can use such monies to fund the partnership activities to include aspects of Royal Island marketing and development; Weissman, Montano and French hereby guarantee the payment of such amount in full, including principal and interest as set forth below.

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1. The recitals set forth above are hereby incorporated by reference and made a part hereof as if fully rewritten herein.

2. Lender will, upon execution of this Agreement, loan LFP $500,000.00 (the "Loan"). LFP agrees to repay the Loan plus Interest set at 10% for the term of the Loan (the "Interest") pursuant to the terms set forth herein.

3. The parties hereto acknowledge and agree that the Loan is unsecured. However, Weissman, Montano and French hereby personally, irrevocably, absolutely, unconditionally, jointly and severally guarantee the timely repayment of the Loan plus the Interest due on the Loan and any collection costs incurred by Lender in collecting any such amounts.

4. This Loan Agreement is a legal agreement, intended to be binding upon each of the parties hereto.

5. The term of the Loan shall be for 90 days from the date hereof, due and payable in full plus Interest on or before Jan. 26, 2006.

6. In the event of default, interest shall be payable on the outstanding amount of the Loan at the Interest rate plus three percent (3%).

7. Once the acquisition of Royal Island is achieved, then the Lender will Receive a home building site (worth a list price of $2 to $3 Million) as Additional interest return. The site shall be a "standard" site as

defined in the Purchase and Sale Agreement.

8.    LFP promises to pay all costs of collection in case payment shall not be made at maturity; and further promises, in case suit is instituted to collect the Loan or the Interest, or any portion thereof, to pay such reasonable attorney's fees in such suit.

9.    This Loan Agreement shall be interpreted in accordance with Illinois law without regard to the provisions of the conflicts of law.

10.   Weissman's address for purposes of any notifications shall be 3238 North Lakewood, Chicago, IL 60659, Telephone 773-348-0639. Montano's address for notifications shall be 249 Market Square, Lake Forest, IL 60045. Office telephone 847-234-3434. French's address for notification shall be c/o Tec Development International, 27 North Wacker Drive, Suite 410, Chicago, IL 60606. Telephone 773-320-9530. LFP is the same as Montano's.

11.   Wiring instructions: Lake Forest Partners LLC , Harris Bank, 824 North Western Ave., Lake Forest, IL 60045. ABA # 071025661  Account # 2910373329.

12.   This Loan Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter contained herein and may not be altered or amended or nor may any provision hereof be waived except by an agreement in writing executed by each of the parties hereto.

In witness whereof, the undersigned have executed this Agreement as of the date set forth above.

By _____        By _____
   Lender                                      Albert J. Montano

By _____        By _____
   Mark D. Weissman                    Christopher T. French

By _____
   Lake Forest Partners, LLC, Managing Member

Exhibit 5

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR. (USAF, Retired), | ) ) ) | |
| Plaintiff, | ) ) | Case No.  07 C 6317 |
| v. | ) ) ) | |
| LAKE FOREST PARTNERS, LLC, a Nevada Corporation; CHRISTOPHER T. FRENCH, ALBERT J. MONTANO and MARK D. WEISSMAN, M.D., | ) ) ) ) ) | |
| Defendants. | ) ) | |

<u>**DECLARATION OF KEVIN BRAUN**</u>

I, Kevin Braun, being competent to testify to the matters set forth below, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.      I reside in the Northern District of Illinois, am over the age of 18, and have personal knowledge regarding the matters set forth herein.

2.      I am a paralegal at Stetler & Duffy, Ltd.  I have been asked to prepare interest calculations for amounts due pursuant to the Loan Agreement 1 and Loan Agreement 2, as those terms are defined in the ~~Declaration of General John T. Chain, Jr~~. Complaint. To prepare this declaration, I have reviewed Loan Agreement 1 and 2.

3.      As of April 14, 2008, the total amount of principal and interest due and owing to General Chain on Loan Agreement 1 is $4,981,512.33.  In addition, until repaid, the obligors under Loan Agreement 1  will owe an additional $2,268.49 per day in interest on the amounts due under Loan Agreement 1.  (*See* Ex. A, attached hereto. )

4.    As of April 14, 2008, the total amount of principal and interest due and owing to General Chain on Loan Agreement 2 is $708,475.34.  In addition, until repaid, the obligors under Loan Agreement 2  will owe an additional $195.89 per day in interest on the amounts due under Loan Agreement 2.  (*See* Ex. A, attached hereto. )

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 14, 2008
Chicago, Illinois

_____
Kevin J. Braun

A

| | Loan Amount | Interest due on loan | Amount Due 8.14.06 | Per Diem | Amount of days from 8.14.06-4.14.08 | Amount Due 4.14.08 |
|---|---|---|---|---|---|---|
| Loan 1 - 8.11.05 | $ 3,000,000.00 | $ 600,000.00 | $ 3,600,000.00 | 2268.493151 | 609 | $ 4,981,512.33 |

| | Loan Amount | Interest due on loan | Amount Due 1.26.06 | Per Diem | Amount of days from 1.26.06-4.14.08 | Amount Due 4.14.08 |
|---|---|---|---|---|---|---|
| Loan 2 - 10.26.05 | $    500,000.00 | $ 50,000.00 | $    550,000.00 | 195.890411 | 809 | $    708,475.34 |

Loan
 3,000,000

| | |
|---|---|
| Interest on principal | 20% |
| Loan Interest Due on Maturity | 600,000 |
| Amount Due August 14, 2006 | 3,600,000 |
| Interest Rate for default of loan | 23% |
| Per Diem | 2268.493151 |

Days in

| | |
|---|---|
| January | 31 |
| February | 28 |
| March | 31 |
| April | 30 |
| May | 31 |
| June | 30 |
| July | 31 |
| August | 31 |
| September | 30 |
| October | 31 |
| November | 30 |
| December | 31 |

Loan
500,000

| | |
|---|---|
| Interest on principal | 10% |
| Loan Interest Due on Maturity | 50,000 |
| | |
| Amount Due 1.26.06 | 550,000 |
| | |
| Interest Rate for default of loan | 13% |
| | |
| Per Diem | 195.890411 |

Days in

| | |
|---|---|
| January | 31 |
| February | 28 |
| March | 31 |
| April | 30 |
| May | 31 |
| June | 30 |
| July | 31 |
| August | 31 |
| September | 30 |
| October | 31 |
| November | 30 |
| December | 31 |