**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR., | ) | |
| (USAF, Retired), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 6317 |
| | ) | |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| LAKE FOREST PARTNERS, LLC, | ) | |
| A Nevada Corporation; CHRISTOPHER | ) | |
| T. FRENCH, ALBERT J. MONTANO | ) | |
| and MARK D. WEISSMAN, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO COMPLAINT**

NOW COMES, Defendant Albert J. Montano ("Montano"), by and through his attorneys, and submits his Answer to Plaintiff's Complaint:

**SUMMARY OF THE CASE**

1.  In or about 2005, Royal Island, LLC entered into a Purchase and Sale Agreement, pursuant to which it would purchase a collection of three uninhabited islands located in the Commonwealth of the Bahamas known as "Royal Island" (the three islands are referred to herein collectively as the "Island"). Royal Island, LLC intended to develop the Island as an upscale luxury community. Defendant Lake Forest is a member of Royal Island, LLC. Defendants Montano, French and Weissman are members of Lake Forest.

**ANSWER:** Montano admits that Lake Forest is a member of Royal Island, LLC, as the term "member" is defined in the operating agreement of Royal Island, LLC. Montano admits that Royal Island, LLC intended to purchase and develop three uninhabited islands in the Commonwealth of the Bahamas (collectively known as "Royal Island"). Montano denies that Royal Island, LLC entered into a Purchase and Sale Agreement for Royal Island. Montano further states that Great Prairie Ventures, Inc. assigned a Purchase and Sale Agreement for Royal Island to Royal Island, LLC. Montano denies the remaining allegations in paragraph 1.

2. In 2005, Defendants solicited General Chain to invest in the development of the Island. Specifically, Defendants asked General Chain to loan $3.5 million to Lake Forest to fund Lake Forest's marketing and development of the Royal Island project.

**ANSWER:** Montano denies that he solicited Chain to invest in the development of Royal Island, and denies that he asked Chain to loan Lake Forest $3,500,000 to fund the marketing and development of Royal Island. Montano further states that Chain was introduced to the Defendants by John Borling, and that Chain loaned $3,500,000 to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Montano denies the remaining allegations.

3. Pursuant to the terms of two Loan Agreements, Lake Forest agreed to repay the loan amounts, plus interest, within a specified time period. In the event of default, an additional 3% rate of interest would be due on the outstanding amount. The loans were jointly and severally guaranteed by Lake Forest's principals - *i.e.,* Defendants French, Montano and Weissman.

**ANSWER:** Montano admits that there were two contracts between Chain and Lake Forest, each titled "Loan Agreement." Montano admits that each of the Loans included a term for interest and payment, and that each of the Loans included a term whereby French, Montano, and Weissman provided a guarantee on the repayment of Lake Forest's obligation to repay principal and interest. Montano denies the remaining allegations in Paragraph 3.

4. As an additional incentive, Defendants promised General Chain that he would receive two home building sites on the Island, each worth between $2 million and $3 million.

**ANSWER:** Montano denies the allegations in paragraph 4. Montano further states that the Loans each contained a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved.

5. On or about August 18, 2006, Defendant Lake Forest notified General Chain that it was unable to make repayment on the loans and that it was no longer able to provide him with the building sites listed as additional interest returns. It is unknown what Defendants did with the $3.5 million that General Chain loaned to Lake Forest, but none of it was repaid to General Chain.

**ANSWER:**   Montano has no basis to admit or deny paragraph 5, and so denies these allegations.

6.   In addition to defaulting on the notes, Defendants did not have authority to promise the two lots on the Island to General Chain and those promises were made solely to induce General Chain to loan $3.5 million to Lake Forest.

**ANSWER:**   Montano denies the allegations in paragraph 6.

7.   Through this action, General Chain seeks to recover damages against Defendants for the amounts owed to General Chain as a result of Defendants' breach of the loan agreements. In addition, General Chain seeks to recover the damages caused by Defendants' fraudulent misrepresentations.

**ANSWER:**   Montano has no basis to admit or deny paragraph 7, and so denies these allegations.

## PARTIES

8.   Plaintiff General John T. Chain, Jr. resides in Fort Worth, Texas and is a citizen of Texas. General Chain is 73 years old and is a retired United States Air Force General whose illustrious military career spanned 34 years and included servicing as the Commander-In-Chief of the United States Strategic Air Command.

**ANSWER:**   On information and belief, Montano admits these allegations.

9.   Defendant Lake Forest Partners, LLC is a Nevada corporation, with its principal place of business in Lake Forest, Illinois. For diversity purposes, Lake Forest is a citizen of Nevada and Illinois. Lake Forest has a majority ownership interest in Royal Island LLC, a Florida corporation.

**ANSWER:**   Montano denies that Lake Forest Partners, LLC is a Nevada Corporation, and states that Lake Forest Partners, LLC is a Nevada limited liability company.  Montano denies that Royal Island LLC is a Florida corporation, and states that Royal Island LLC is a Florida Limited Liability Company.  Montano denies that Lake Forest has a majority ownership interest in Royal Island LLC.

10.   Defendant French resides in Fontana, Wisconsin and is a citizen of Wisconsin. At all times material to this lawsuit, French was a Principal of Lake Forest and a member of Royal Island, LLC.

3

**ANSWER:**   On information and belief, Montano admits that French resides in Wisconsin.  Montano denies the remaining allegations in paragraph 10.

11.    Defendant Montano resides within the Northern District of Illinois and is a citizen of Illinois. At all times material to this lawsuit, Montano was a Principal of Lake Forest.

**ANSWER:**   Montano admits that he resides in the Northern District of Illinois and is a Citizen of Illinois.  Montano denies the remaining allegations in paragraph 11.

12.    Defendant Weissman resides within the Northern District of Illinois and is a citizen of Illinois. Weissman is a licensed physician. At all times material to this lawsuit, Weissman was a Principal of Lake Forest.

**ANSWER:**   On information and belief, Montano admits that Weissman resides in the Northern District of Illinois, is a licensed physician, and is a citizen of Illinois.  Montano denies the remaining allegations in paragraph 10.

## JURISDICTION AND VENUE

13.    This is a civil action in which the United States District Court has original jurisdiction under the provisions of 28 U.S.C. § 1332(a) because Plaintiff and the Defendants are citizens of different states and because the amount in controversy exceeds $75,000.

**ANSWER:**   This paragraph constitutes a legal conclusion, and therefore no answer is required.  To the extent an answer is required, the allegations contained in paragraph 13 are denied.

14.    Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendants reside in this judicial district and a substantial portion of the events or omissions giving rise to General Chain's claims occurred in this judicial district.

**ANSWER:**   This paragraph constitutes a legal conclusion, and therefore no answer is required.  To the extent an answer is required, the allegations contained in paragraph 14 are denied.

## FACTUAL BACKGROUND

15.    Royal Island, LLC owned an option to purchase the Island.

4

**ANSWER:** Montano denies the allegations contained in paragraph 15.

16. Development of the Island was marketed as an exclusive high-end five-star residential, golf, marina, and resort hotel development project, with a target market of international high profile and high net worth individuals. The planned development of the Island included over 200 single family residential lots and homes; an 18-hole Greg Norman private signature championship golf course and clubhouse; a 200-slip deep water marina capable of docking yachts up to 300 feet in length; and a 50-room villa style five-star hotel and casino.

**ANSWER:** Montano admits the allegations contained in paragraph 16, and further states that the plans for the development changed over time.

17. Lake Forest, through its principals, solicited investors relating to the development of the Island.

**ANSWER:** Montano denies that Lake Forest solicited investors for the development of Royal Island. Montano further states that Lake Forest obtained loans for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island.

18. In or about August 2005, Lake Forest solicited General Chain for an investment in the development of the Island. As part of the solicitation, Defendants provided General Chain with marketing materials prepared for him describing the development of the Island.

**ANSWER:** Montano denies that Lake Forest solicited Chain to invest in the development of Royal Island. Montano admits that Chain was provided marketing materials related to the development of Royal Island. Montano denies the remaining allegations in paragraph 18.

19. Defendants asked General Chain to make an initial loan of $3 million to Lake Forest. To induce General Chain to make such a large investment, Defendants promised General Chain that in addition to a guaranteed high rate of return on his principal, Defendants would provide General Chain a parcel of property on the Island valued between $2 million and $3 million.

**ANSWER:** Montano admits that Chain and Lake Forest entered into Loan 1, which agreement provided that Chain would loan $3,000,000 to Lake Forest. Montano denies that Chain was promised a guaranteed high rate of return or a home building site on Royal Island.

5

Montano further states that Loan 1 included a term for interest to be paid on the principal upon repayment, and a conditional term whereby Chain might receive a home building site on Royal Island if acquisition of Royal Island was achieved. Montano denies the remaining allegations in Paragraph 19.

20. On or about August 11, 2005, General Chain agreed to loan Lake Forest $3 million pursuant to the terms a Loan Agreement ("Loan Agreement 1"). A true and correct copy of Loan Agreement 1 is attached hereto as Exhibit 1. Pursuant to Loan Agreement 1, Lake Forest agreed to repay the $3 million loan amount, plus interest of twenty percent per annum (20%), on or before August 14, 2006. In the event of default, Lake Forest agreed to pay an additional 3% rate of interest on the outstanding amount. Loan Agreement 1 also provided that General Chain would receive a home building site on the Island worth between $2 million and $3 million. Defendants French, Montano and Weissman guaranteed Lake Forest's obligations under Loan Agreement 1.

**ANSWER:** Montano denies that Loan 1 provided that Chain would receive a home building site on Royal Island, and deny that French, Montano, and Weissman guaranteed Lake Forest's obligations pursuant to Loan 1. Montano further states that Loan 1 included a term for interest to be paid on the principal upon repayment, and a conditional term whereby Chain might receive a home building site on Royal Island if acquisition of Royal Island was achieved. Montano denies the remaining allegations in paragraph 20.

21. Between August 10 and October 25, 2005, Defendants asked General Chain to loan additional sums to Lake Forest to fund the acquisition of the Island. Like the first loan, in addition to interest on the principal amount of the loan, Defendants agreed to provide General Chain another parcel of land on the Island.

**ANSWER:** Montano denies that the Defendants asked Chain to fund the acquisition of Royal Island. Montano admits that Lake Forest and Chain entered into Loan 2, which included an identical conditional term to Loan 1 whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved. Montano denies the remaining allegations in Paragraph 21.

22. On or about October 26, 2005, General Chain loaned Lake Forest an additional $500,000 pursuant to the terms of a Loan Agreement ("Loan Agreement 2"). A true and correct

6

copy of Loan Agreement 2 is attached hereto as Exhibit 2.  Under the terms of Loan Agreement 2, Lake Forest agreed to repay the $500,000 loan amount, plus interest often percent per annum (10%), on or before January 26, 2006. In the event of default, Lake Forest agreed to pay an additional 3% rate of interest on the outstanding amount. Loan Agreement 2 also provided that General Chain would receive a home building site on the Island worth between $2 million and $3 million. Defendants French, Montano and Weissman guaranteed Lake Forest's obligations under Loan Agreement 2.

**ANSWER:** Montano denies that Loan 2 provided that Chain would receive a home building site on Royal Island, and denies that French, Montano, and Weissman guaranteed Lake Forest's obligations pursuant to Loan 2.  Montano further states that Loan 2 included a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved.

23. On January 26, 2006, Lake Forest defaulted on its obligations to repay General Chain $500,000, plus interest, as set forth in Loan Agreement 2.

**ANSWER:** Montano admits that Lake Forest did not repay Chain $500,000, plus interest, on January 26, 2006.

24. On August 14, 2006, Lake Forest defaulted on its obligations to repay General Chain $3 million, plus interest, as set forth in Loan Agreement 1.

**ANSWER:** Montano admits that Lake Forest did not repay Chain $3,000,000, plus interest, on August 14, 2006.

25. On or about August 18, 2006, French notified General Chain in writing that Lake Forest was no longer a direct participant in the ownership, management or development of the Royal Island project. According to Defendant French, as a result of this change in circumstances, Lake Forest was experiencing significant hardship and was exploring other financial sources and opportunities to assist it in meeting its financial obligations to Lake Forest's creditors, including General Chain. In addition, Defendant French notified General Chain that Lake Forest was no longer able to commit to its promise to provide General Chain with two building lot sites on the Island.

**ANSWER:** Montano lacks sufficient information to form a basis to answer the allegations contained in paragraph 25, and so denies them.

26. On or about April 24, 2007, Defendant French notified General Chain by letter that Lake Forest continued to experience financial set-backs that were preventing Lake Forest

7

and its principals from satisfying its financial obligations to General Chain. Defendant French requested General Chain's patience as Lake Forest implemented changes that would improve Lake Forest's financial outlook. French informed General Chain that another person would be contacting him within two weeks to discuss the status of the Loan Agreements and to implement a repayment plan.

**ANSWER:** Montano lacks sufficient information to form a basis to answer the allegations contained in paragraph 26, and so denies them.

27. Thereafter, nobody contacted General Chain to implement a payment plan. General Chain has demanded that Defendants perform their obligations under Loan Agreement 1 and Loan Agreement 2 and the individual guarantees of the Loan Agreements.

**ANSWER:** Montano admits that he has not contacted General Chain to implement a payment plan. Montano lacks sufficient information to form a belief as to the remaining allegations contained in paragraph 27, and so denies them.

28. Despite demands by General Chain, Defendants Lake Forest, French, Montano and Weissman have failed to pay him any amounts due and owing on Loan Agreement 1 and Loan Agreement 2.

**ANSWER:** Montano admits that he has not made any payment to Chain. Montano lacks sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 28, and so denies them.

## COUNT I - BREACH OF CONTRACT

29. General Chain realleges and incorporates Paragraphs 1 through 28, inclusive, as if fully set forth herein.

**ANSWER:** Montano realleges and incorporates his answers to paragraphs 1 through 28, inclusive, as if fully set forth herein.

30. Loan Agreement 1 is a valid and enforceable agreement.

**ANSWER:** Montano denies the allegations in paragraph 30.

31. General Chain performed all of his obligations under Loan Agreement 1.

**ANSWER:** Montano admits the allegations in paragraph 31.

32.     Defendants Lake Forest, Weissman, Montano, and French breached their agreement by failing to repay General Chain the $3 million, plus interest, due on Loan Agreement 1.

**ANSWER:**    Montano admits that he has not paid General Chain $3,000,000, plus interest. Montano denies all remaining allegations in paragraph 32.

33.    Defendants further breached Loan Agreement 1 by advising that they could not provide General Chain with a lot on the Island worth between $2 million and $3 million.

**ANSWER:**    Montano denies the allegations in paragraph 33.

34.    General Chain has been damaged by Defendants' breach of Loan Agreement 1.

**ANSWER:**    Montano lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 34, and so denies them.

## COUNT II - BREACH OF CONTRACT

35.    General Chain realleges and incorporates Paragraphs 1 through 28, inclusive, as if fully set forth herein.

**ANSWER:**    Montano realleges and incorporates his answers to Paragraphs 1 through 28, inclusive, as if fully set forth herein.

36.    Loan Agreement 2 is a valid and enforceable agreement.

**ANSWER:**    Montano denies the allegations in paragraph 36.

37.    General Chain performed all of his obligations under Loan Agreement 2.

**ANSWER:**    Montano admits the allegations in paragraph 37.

38.    Defendants Lake Forest, Weissman, Montano, and French breached their agreement by failing to repay General Chain the $500,000, plus interest, due on Loan Agreement 2. As a result, General Chain has suffered damages of at least $3.5 million.

**ANSWER:**    Montano admits that he did not pay Chain $500,000, plus interest. Montano lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 38, and therefore denies them.

39.    Defendants further breach Loan Agreement 2 by advising that they could not provide General Chain with a lot on the Island worth between $2 million and $3 million.

9

**ANSWER:**   Montano denies the allegations contained in paragraph 39.

40.   General Chain has been damaged by Defendants' breach of Loan Agreement 2.

**ANSWER:**   Montano lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 40, and so denies them.

## COUNT III - COMMON LAW FRAUD

41.   General Chain realleges and incorporates Paragraphs 1 through 40, inclusive, as if fully set forth herein.

**ANSWER:**   Montano realleges and incorporates his answers to paragraphs 1 through 40, inclusive, as if fully set forth herein.

42.   To induce General Chain to loan $3 million to Lake Forest, Defendants represented that in addition to interest on the $3 million, Lake Forest would provide General Chain a home building site on the Island that had a value of between $2 million and $3 million after the Island was purchased.

**ANSWER:**   Montano denies that Chain was induced to make a loan to Lake Forest, and denies that Montano represented to Chain that a home building site on Royal Island would be provided to Chain.  Montano denies the remaining allegations contained in paragraph 42.

43.   Similarly, to induce General Chain to loan them an additional $500,000, Defendants represented to General Chain that in addition to interest on the $500,000, Lake Forest would provide General Chain a home building site on the Island that had a value between $2 million and $3 million once the Island was acquired.

**ANSWER:**   Montano denies that Chain was induced to make a loan to Lake Forest, and denies that Montano represented to Chain that a home building site on Royal Island would be provided to Chain.  Montano denies the remaining allegations contained in paragraph 43.

44.   General Chain relied on Defendants' promises to provide him with two multi-million dollar lots on the Island, and lent Lake Forest $3.5 million.

**ANSWER:**   Montano lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 44, and so denies them.

45.   General Chains' reliance was reasonable.

**ANSWER:**   Montano denies the allegations contained in paragraph 45.

46.   The representations made by Defendants were false because at the time Loan Agreement 1 and Loan Agreement 2 were presented to General Chain, Lake Forest did not have the authority to promise to give General Chain lots on the Island.

**ANSWER:**   Montano denies the allegations contained in paragraph 46.

47.   Defendants knew that the representations concerning the two lots were false at the time they were made and made those representations for the purpose of inducing General Chain to loan Lake Forest a total of $3.5 million.

**ANSWER:**   Montano denies the allegations contained in paragraph 47.

48.   As a proximate cause of his reliance upon the misrepresentations of Defendants, General Chain has been damaged because he would not have loaned $3.5 million to Lake Forest if Defendants had not promised to provide him with the lots on the Island.

**ANSWER:**   Montano lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 48, and so denies them.

## JURY DEMAND

49.   Plaintiff demands a trial by jury of all facts, issues and claims presented by this Complaint that are so triable.

**ANSWER:**   No response is required.

## AFFIRMATIVE DEFENSES

Montano adopts and asserts the affirmative defenses asserted by defendants Christopher French and Lake Forest Partners, LLC in response to the Complaint.

**ALBERT J. MONTANO**

/s/ Christopher J. Petelle
One of His Attorneys

Louis D. Bernstein (ARDC #02883007)
Lorne T. Saeks (ARDC #6207595)
Christopher J. Petelle (ARDC # 6287082)
**MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000

11

## CERTIFICATE OF SERVICE

      I, Christopher J. Petelle, an attorney, certify that, on this 25th day of April 2008, I electronically filed **ANSWER TO COMPLAINT**, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

| | |
|---|---|
| Jonathan M. Cyrluk<br>Henry Baskerville<br>Stetler & Duffy, Ltd.<br>11 South LaSalle Street<br>Suite 1200<br>Chicago, IL 60603 | Martin J. Bishop<br>Daniel A. Dingerson<br>Foley & Lardner, LLP<br>321 N. Clark Street, Suite 2800<br>Chicago, IL 60610 |

Scott Weissman
3238 North Lakewood
Chicago, IL 60657


                                              /s/ Christopher J. Petelle