# Exhibit 9

**FILED**
**FEB 12 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAL JOHN T. CHAIN, JR. (USAF, Retired), | ) ) ) |
| Plaintiff, | ) ) Case No. 07 C 6317 |
| v. | ) ) Judge Guzman |
| LAKE FOREST PARTNERS, LLC, CHRISTOPHER T. FRENCH, ALBERT J. MONTANO, and MARK D. WEISSMAN, M.D., Defendants. | ) ) Magistrate Judge Mason ) ) ) ) |

## ANSWER TO COMPLAINT

Defendants Lake Forest Partners, LLC ("Lake Forest") and Christopher T. French, by and through their attorneys, Foley & Lardner LLP, answer the Complaint of General John T. Chain, Jr. ("Chain") as follows:

### SUMMARY

1. In or about 2005, Royal Island, LLC entered into a Purchase and Sale Agreement, pursuant to which it would purchase a collection of three uninhabited islands located in the Commonwealth of the Bahamas known as "Royal Island" (the three islands are referred to herein collectively as the "Island"). Royal Island, LLC intended to develop the Island as an upscale luxury community. Defendant Lake Forest is a member of Royal Island, LLC. Defendants Montano, French and Weissman are members of Lake Forest.

**ANSWER:** Lake Forest and French admit that Lake Forest is a member of Royal Island, LLC, as the term "member" is defined in the operating agreement of Royal Island, LLC. Lake Forest and French admit that Royal Island, LLC intended to purchase and develop three uninhabited islands in the Commonwealth of the Bahamas (collectively known as "Royal Island"). Lake Forest and French deny that Royal Island, LLC entered into a Purchase and Sale Agreement for Royal Island. Lake Forest and French further state that Great Prarie Ventures, Inc. assigned a

Purchase and Sale Agreement for Royal Island to Royal Island, LLC. Lake Forest and French deny the remaining allegations in Paragraph 1.

> 2. In 2005, Defendants solicited General Chain to invest in the development of the Island. Specifically, Defendants asked General Chain to loan $3.5 million to Lake Forest to fund Lake Forest's marketing and development of the Royal Island project.

**ANSWER:** Lake Forest and French deny that they solicited Chain to invest in the development of Royal Island, and deny that they asked Chain to loan Lake Forest $3,500,000 to fund the marketing and development of Royal Island. Lake Forest and French further state that Chain was introduced to the Defendants by John Borling, and that Chain loaned $3,500,000 to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Lake Forest and French deny the remaining allegations in Paragraph 2.

> 3. Pursuant to the terms of two Loan Agreements, Lake Forest agreed to repay the loan amounts, plus interest, within a specified time period. In the event of default, an additional 3% rate of interest would be due on the outstanding amount. The loans were jointly and severally guaranteed by Lake Forest's principals – *i.e.*, Defendants French, Montano and Weissman.

**ANSWER:** Lake Forest and French admit that there were two executed contracts between Chain and Lake Forest, each titled "Loan Agreement," one dated August 11, 2005 ("Loan 1"), and another October 26, 2005 ("Loan 2," and collectively, the "Loans"). Lake Forest and French admit that each of the Loans included a term for interest and repayment, and that each of the Loans included a term whereby French, Montano, and Weissman provided a guarantee on the repayment of Lake Forest's obligation to repay principal and interest. Lake Forest and French deny the remaining allegations in Paragraph 3.

> 4. As an additional incentive, Defendants promised General Chain that he would receive two home building sites on the Island, each worth between $2 million and $3 million.

2

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 4. Lake Forest and French further state that the Loans each contained a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved.

> 5. On or about August 18, 2006, Defendant Lake Forest notified General Chain that it was unable to make repayment on the loans and that it was no longer able to provide him with the building sites listed as additional interest returns. It is unknown what Defendants did with the $3.5 million that General Chain loaned to Lake Forest, but none of it was repaid to General Chain.

**ANSWER:** Lake Forest and French deny that Lake Forest notified Chain that it was unable to make repayment on the loans and was no longer able to provide Chain with the building sites on Royal Island. Lake Forest and French further state that in a Memo dated August 18, 2006, sent to Chain by French on behalf of Lake Forest, Lake Forest stated that it was experiencing hardship, was in the process of exploring other financing sources and opportunities to assist in meeting financial obligations to creditors, and that as a result of the hardship Lake Forest could not commit to the home building sites at that time. Lake Forest and French admit that none of the $3,500,000 provided by Chain to Lake Forest was used to repay Chain. Lake Forest and French further state the $3,500,000 loaned to Lake Forest by Chain was used by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 5, which allegations are therefore denied.

> 6. In addition to defaulting on the notes, Defendants did not have authority to promise the two lots on the Island to General Chain and those promises were made solely to induce General Chain to loan $3.5 million to Lake Forest.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 6.

> 7. Through this action, General Chain seeks to recover damages against Defendants for the amounts owed to General Chain as a result of

3

Defendants' breach of the loan agreements. In addition, General Chain seeks to recover the damages caused by Defendants' fraudulent misrepresentations.

**ANSWER:** Lake Forest and French admit that Chain is seeking to recover damages against Defendants for alleged breaches of the Loans and alleged misrepresentations, but deny the merit of those allegations.

### Parties

8. Plaintiff General John T. Chain, Jr. resides in Fort Worth, Texas and is a citizen of Texas. General Chain is 73 years old and is a retired United States Air Force General whose illustrious military career spanned 34 years and included serving as the Commander-In-Chief of the United States Strategic Air Command.

**ANSWER:** Lake Forest and French admit that Chain is a retired United State Air Force General. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 8, which allegations are therefore denied.

9. Defendant Lake Forest Partners, LLC is a Nevada corporation, with its principal place of business in Lake Forest, Illinois. For diversity purposes, Lake Forest is a citizen of Nevada and Illinois. Lake Forest has a majority ownership interest in Royal Island LLC, a Florida corporation.

**ANSWER:** Lake Forest and French deny that Lake Forest Partners, LLC is a Nevada corporation, and state that Lake Forest Partners, LLC is a Nevada limited liability company. Lake Forest and French deny that Royal Island LLC is a Florida corporation, and state that Royal Island LLC is a Florida limited liability company. Lake Forest and French deny that Lake Forest has a majority ownership interest in Royal Island, LLC and further state that Lake Forest has a forty-nine percent (49.0%) interest in Royal Island, LLC. Lake Forest and French admit the remaining allegations in Paragraph 9.

10. Defendant French resides in Fontana, Wisconsin and is a citizen of Wisconsin. At all times material to this lawsuit, French was a Principal of Lake Forest and a member of Royal Island, LLC.

4

**ANSWER:** Lake Forest and French admit that French resides in, and is a citizen of Wisconsin. Lake Forest and French deny the remaining allegations in Paragraph 10.

11. Defendant Montano resides within the Northern District of Illinois and is a citizen of Illinois. At all times material to this lawsuit, Montano was a Principal of Lake Forest.

**ANSWER:** Upon information and belief, Lake Forest and French admit that Montano resides within the Northern District of Illinois and is a citizen of Illinois. Lake Forest and French deny the remaining allegations in Paragraph 11.

12. Defendant Weissman resides within the Northern District of Illinois and is a citizen of Illinois. Weissman is a licensed physician. At all times material to this lawsuit, Weissman was a Principal of Lake Forest.

**ANSWER:** Upon information and belief, Lake Forest and French admit that Weissman resides within the Northern District of Illinois and is a citizen of Illinois. Lake Forest and French deny the remaining allegations in Paragraph 12.

### Jurisdiction & Venue

13. This is a civil action in which the United States District Court has original jurisdiction under the provisions of 28 U.S.C. § 1332(a) because Plaintiff and the Defendants are citizens of different states and because the amount in controversy exceeds $75,000.

**ANSWER:** Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegation as it refers to Plaintiff's state of citizenship, and thus whether there is complete diversity between the parties, which allegation is therefore denied. Lake Forest and French admit the remaining allegations in Paragraph 13.

14. Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendants reside in this judicial district and a substantial portion of the events or omissions giving rise to General Chain's claims occurred in this judicial district.

**ANSWER:** Lake Forest and French admit that Defendant Lake Forest is a resident in the Northern District of Illinois. Lake Forest and French deny that French is a resident in the

5

Northern District of Illinois. Upon information and belief, Lake Forest and French admit that Montano and Weissman are residents in the Northern District of Illinois. Lake Forest and French deny that venue is proper pursuant to 28 U.S.C. § 1391(a) in the Northern District of Illinois based on the residence of Defendants. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 14, but do not contest venue.

### Factual Background

15. Royal Island, LLC owned an option to purchase the Island.

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 15. Lake Forest and French further state that Royal Island, LLC did not own an option to purchase Royal Island at the time the Loans were made.

16. Development of the Island was marketed as an exclusive high-end five star residential, golf, marina, and resort hotel development project, with a target market of international high profile and high net worth individuals. The planned development of the Island included over 200 single family residential lots and homes; an 18-hole Greg Norman private signature championship golf course and clubhouse; a 200-slip deep water marina capable of docking yachts up to 300 feet in length; and a 50-room villa style five-star hotel and casino.

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 16. Lake Forest and French further state that the planned development of Royal Island changed over time.

17. Lake Forest, through its principals, solicited investors relating to the development of the Island.

**ANSWER:** Lake Forest and French deny that Lake Forest solicited investors for the development of Royal Island. Lake Forest and French further state that Lake Forest obtained loans for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island.

18. In or about August 2005, Lake Forest solicited General Chain for an investment in the development of the Island. As part of the solicitation,

6

Defendants provided General Chain with marketing materials prepared for him describing the development of the Island.

**ANSWER:** Lake Forest and French deny that Lake Forest solicited Chain to invest in the development of Royal Island. Lake Forest and French admit that Chain was provided marketing materials related to the development of Royal Island. Lake Forest and French further state that John Borling introduced Chain to the Defendants, and that Chain made Loans to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Lake Forest and French deny the remaining allegations in Paragraph 18.

19. Defendants asked General Chain to make an initial loan of $3 million to Lake Forest. To induce General Chain to make such a large investment, Defendants promised General Chain that in addition to a guaranteed high rate of return on his principal, Defendants would provide General Chain a parcel of property on the Island valued between $2 million and $3 million.

**ANSWER:** Lake Forest and French admit that Chain and Lake Forest entered into Loan 1, which agreement provided that Chain would loan $3,000,000 to Lake Forest. Lake Forest and French deny that Chain was promised a guaranteed high rate of return or a home building site on Royal Island. Lake Forest and French further state that Loan 1 included a term for interest to be paid on the principal upon repayment, and a conditional term whereby Chain might receive a home building site on Royal Island if acquisition of Royal Island was achieved. Lake Forest and French deny the remaining allegations in Paragraph 19.

20. On or about August 11, 2005, General Chain agreed to loan Lake Forest $3 million pursuant to the terms of a Loan Agreement ("Loan Agreement 1"). A true and correct copy of Loan Agreement 1 is attached hereto as Exhibit 1. Pursuant to Loan Agreement 1, Lake Forest agreed to repay the $3 million loan amount, plus interest of twenty percent per annum (20%), on or before August 14, 2006. In the event of default, Lake Forest agreed to pay an additional 3% rate of interest on the outstanding amount. Loan Agreement 1 also provided that General Chain would receive a home building site on the Island worth between $2 million and $3 million. Defendants French, Montano and Weissman guaranteed Lake Forest's obligations under Loan Agreement 1.

**ANSWER:** Lake Forest and French deny that Loan 1 provided that Chain would receive a home building site on Royal Island, and deny that French, Montano, and Weissman guaranteed Lake Forest's obligations pursuant to Loan 1. Lake Forest and French further state that Loan 1 included a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved, and state that Loan 1 included a term whereby French, Montano, and Weissman provided a guarantee on the repayment of the $3,000,000 loan plus the interest due and any collection costs incurred in collecting the $3,000,000 and interest, but did not guarantee any other obligations of Lake Forest. Lake Forest and French admit the remaining allegations in Paragraph 20.

21. Between August 10 and October 25, 2005, Defendants asked General Chain to loan additional sums to Lake Forest to fund the acquisition of the Island. Like the first loan, in addition to interest on the principal amount of the loan, Defendants agreed to provide General Chain another parcel of land on the Island.

**ANSWER:** Lake Forest and French deny that Defendants asked Chain to fund the acquisition of Royal Island. Lake Forest and French further state that Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island. Lake Forest and French admit that Lake Forest and Chain entered into Loan 2, which agreement included an identical conditional term to Loan 1 whereby Chain might receive a home building site on Royal Island, if the acquisition of Royal Island was achieved. Lake Forest and French deny the remaining allegations in Paragraph 21.

22. On or about October 26, 2005, General Chain loaned Lake Forest an additional $500,000 pursuant to the terms of a Loan Agreement ("Loan Agreement 2"). A true and correct copy of the Loan Agreement 2 is attached hereto as Exhibit 2. Under the terms of Loan Agreement 2, Lake Forest agreed to repay the $500,000 loan amount, plus interest of ten percent per annum (10%), on or before January 26, 2006. In the event of default, Lake Forest agreed to pay an additional 3% rate of interest on the outstanding amount. Loan Agreement 2 also provided that General Chain would receive a home building site on the Island

8

worth between $2 million and $3 million. Defendants French, Montano and Weissman guaranteed Lake Forest's obligations under Loan Agreement 2.

**ANSWER:** Lake Forest and French deny that Loan 2 provided that Chain would receive a home building site on Royal Island, and deny that French, Montano, and Weissman guaranteed Lake Forest's obligations pursuant to Loan 2. Lake Forest and French further state that Loan 2 included a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved, and state that Loan 2 included a term whereby French, Montano, and Weissman provided a guarantee on the repayment of the $500,000 loan plus the interest due and any collection costs incurred in collecting the $500,000 and interest, but did not guarantee any other obligations of Lake Forest. Lake Forest and French admit the remaining allegations in Paragraph 22.

23. On January 26, 2006, Lake Forest defaulted on its obligations to repay General Chain $500,000, plus interest, as set forth in Loan Agreement 2.

**ANSWER:** Lake Forest and French admit that Lake Forest did not repay Chain $500,000, plus interest, on January 26, 2006.

24. On August 14, 2006, Lake Forest defaulted on its obligations to repay General Chain $3 million, plus interest, as set forth in Loan Agreement 1.

**ANSWER:** Lake Forest and French admit that Lake Forest did not repay Chain $3,000,000, plus interest, on August 14, 2006.

25. On or about August 18, 2006, French notified General Chain in writing that Lake Forest was no longer a direct participant in the ownership, management or development of the Royal Island project. According to Defendant French, as a result of this change in circumstances, Lake Forest was experiencing significant hardship and was exploring other financial sources and opportunities to assist it in meeting its financial obligations to Lake Forest's creditors, including General Chain. In addition, Defendant French notified General Chain that Lake Forest was no longer able to commit to its promise to provide General Chain with two building lot sites on the Island.

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 25. Lake Forest and French further state that French notified Chain that the condition precedent to Chain receiving two home building sites on Royal Island had not been met, and that Lake Forest was not able to commit to non-monetary considerations at that time.

26. On or about April 24, 2007, Defendant French notified General Chain by letter that Lake Forest continued to experience financial set-backs that were preventing Lake Forest and its principals from satisfying its financial obligations to General Chain. Defendant French requested General Chain's patience as Lake Forest implemented changes that would improve Lake Forest's financial outlook. French informed General Chain that another person would be contacting him within two weeks to discuss the status of the Loan Agreements and to implement a repayment plan.

**ANSWER:** Lake Forest and French admit that French sent a letter to Chain dated April 24, 2007, admit that the letter stated that Lake Forest had suffered setbacks which affected its ability to satisfy its financial obligations to Chain, and admit that the letter stated that Chain would be contacted by a representative of Lake Forest to discuss the current and future status of the Loans and to work with Chain to implement a plan to pay down Lake Forest's financial obligation. Lake Forest and Chain deny the remaining allegations in Paragraph 26.

27. Thereafter, nobody contacted General Chain to implement a payment plan. General Chain has demanded that Defendants perform their obligations under Loan Agreement 1 and Loan Agreement 2 and the individual guarantees of the Loan Agreements.

**ANSWER:** Lake Forest and French admit that Chain has made demands on each of them. Lake Forest and French deny that they did not contact Chain regarding repayment of the Loans. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 27, which allegations are therefore denied.

28. Despite demands by General Chain, Defendants Lake Forest, French, Montano and Weissman have failed to pay him any amounts due and owing on Loan Agreement 1 and Loan Agreement 2.

10

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 28 as they pertain to Lake Forest and French. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 28 as they pertain to Montano and Weissman, which allegations are therefore denied.

### Count I – Breach of Contract

29. General Chain realleges and incorporates Paragraphs 1 through 28, inclusive, as if fully set forth herein.

**ANSWER:** Lake Forest and French reallege and incorporate their answers to Paragraphs 1 through 28, inclusive, as if fully set forth herein.

30. Loan Agreement 1 is a valid and enforceable agreement.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 30.

31. General Chain performed all of his obligations under Loan Agreement 1.

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 31.

32. Defendants Lake Forest, Weissman, Montano, and French breached their agreement by failing to repay General Chain the $3 million, plus interest, due on Loan Agreement 1.

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 32 as they pertain to Lake Forest and French. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 as they pertain to Montano and Weissman, which allegations are therefore denied.

33. Defendants further breached Loan Agreement 1 by advising that they could not provide General Chain with a lot on the Island worth between $2 million and $3 million.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 33.

34. General Chain has been damaged by Defendants' breach of Loan Agreement 1.

CHIC_1747486.8

**ANSWER:** Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 34, which allegations are therefore denied.

### Count II – Breach of Contract

35. General Chain realleges and incorporates Paragraphs 1 through 28, inclusive, as if fully set forth herein.

**ANSWER:** Lake Forest and French reallege and incorporate their answers to Paragraphs 1 through 28, inclusive, as if fully set forth herein.

36. Loan Agreement 2 is a valid and enforceable agreement.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 36.

37. General Chain performed all of his obligations under Loan Agreement 2.

**ANSWER:** Lake Forest and French admit the allegations in Paragraph 37.

38. Defendants Lake Forest, Weissman, Montano, and French breached their agreement by failing to repay General Chain the $500,000, plus interest, due on Loan Agreement 2. As a result, General Chain has suffered damages of at least $3.5 million.

**ANSWER:** Lake Forest and French admit that they did not pay Chain $500,000, plus interest, due on Loan 2. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 38, which allegations are therefore denied.

39. Defendants further breach[ed] Loan Agreement 2 by advising that they could not provide General Chain with a lot on the Island worth between $2 million and $3 million.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 39.

40. General Chain has been damaged by Defendants' breach of Loan Agreement 2.

12

CHIC_1747486.8

**ANSWER:** Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 40, which allegations are therefore denied.

### Count III – Common Law Fraud

41. General Chain realleges and incorporates Paragraphs 1 through 40, inclusive, as if fully set forth herein.

**ANSWER:** Lake Forest and French reallege and incorporate their answers to Paragraphs 1 through 40, inclusive, as if fully set forth herein.

42. To induce General Chain to loan $3 million to Lake Forest, Defendants represented that in addition to interest on the $3 million, Lake Forest would provide General Chain a home building site on the Island that had a value of between $2 million and $3 million after the Island was purchased.

**ANSWER:** Lake Forest and French admit that Chain and Lake Forest entered into Loan 1, which agreement provided that Chain would loan $3,000,000 to Lake Forest. Lake Forest and French deny that Chain was induced to make a loan to Lake Forest, and deny that Lake Forest or French represented that a home building site on Royal Island would be provided to Chain. Lake Forest and French further state that Loan 1 included a term for interest on the principal, and a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved. Lake Forest and French deny the remaining allegations in Paragraph 42.

43. Similarly, to induce General Chain to loan them an additional $500,000, Defendants represented to General Chain that in addition to interest on the $500,000, Lake Forest would provide General Chain a home building site on the Island that had a value between $2 million and $3 million once the Island was acquired.

**ANSWER:** Lake Forest and French admit that Chain and Lake Forest entered into Loan 2, which agreement provided that Chain would loan $500,000 to Lake Forest. Lake Forest and French deny that Chain was induced to make a loan to Lake Forest, and deny that Lake Forest or

13

French represented that a home building site on Royal Island would be provided to Chain. Lake Forest and French further state that Loan 2 included a term for interest on the principal, and a conditional term whereby Chain might receive a home building site on Royal Island if the acquisition of Royal Island was achieved. Lake Forest and French deny the remaining allegations in Paragraph 43.

    44. General Chain relied on Defendants' promises to provide him with two multi-million dollar lots on the Island, and lent Lake Forest $3.5 million.

**ANSWER:** Lake Forest and French admit that Chain loaned $3,500,000 to Lake Forest. Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 44, which allegations are therefore denied.

    45. General Chain's reliance was reasonable.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 45.

    46. The representations made by Defendants were false because at the time Loan Agreement 1 and Loan Agreement 2 were presented to General Chain, Lake Forest did not have the authority to promise to give General Chain lots on the Island.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 46. Lake Forest and French further state that the Loans provide a conditional term whereby Chain might receive a home building site on Royal Island, if the acquisition of Royal Island was achieved; the conditional term made clear, and Chain had notice, that at the time of the Loans, the acquisition of Royal Island had not been achieved by any of the parties to the Loans, and thus the statements were forward-looking expressions of intent.

    47. Defendants knew that the representations concerning the two lots were false at the time they were made and made those representations for the purpose of inducing General Chain to loan Lake Forest a total of $3.5 million.

**ANSWER:** Lake Forest and French deny the allegations in Paragraph 47.

48.     As a proximate cause of his reliance upon the misrepresentations of Defendants, General Chain has been damaged because he would not have loaned $3.5 million to Lake Forest if Defendants had not promised to provide him with the lots on the Island.

**ANSWER:**   Lake Forest and French lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 48, which allegations are therefore denied.

### Jury Demand

49.     Plaintiff demands a trial by jury of all facts and claims presented by this Complaint that are so triable.

**ANSWER:**   Lake Forest and French admit the allegations in Paragraph 49.

### AFFIRMATIVE DEFENSES

Lake Forest and French assert the following affirmative defenses in response to the Complaint:

### First Affirmative Defense
### (Failure to Plead a Condition Precedent)

Plaintiff has failed to plead a condition precedent to performance of certain obligations pursuant to the Loans. Specifically, each of the Loans provides a conditional term whereby Chain might receive a home building site on Royal Island, if the acquisition of Royal Island is achieved. Nowhere in the Complaint does Plaintiff plead that the acquisition of Royal Island was achieved, a fact necessary to the relief sought.

### Second Affirmative Defense
### (Indefinite Terms)

Certain provisions of the Loans are indefinite, unclear, and do not provide the court with a means of determining the intent of the parties. The essential terms are so uncertain

15

that there is no basis for deciding whether the agreement has been kept or broken. Where the Loans are so indefinite, they are unenforceable, and there can be no breach.

### Third Affirmative Defense
### (Failure to State a Claim Upon Which Relief May be Granted)

Plaintiff's claim for breach of contract regarding the home building sites on Royal Island, and Plaintiff's fraud claim in its entirety, both fail to state a claim upon which relief may be granted. Defendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans had acquired Royal Island. Defendants' representations and the terms in the Loans regarding Plaintiff's receipt of home building sites on Royal Island were conditioned upon a future event which did not occur. The failure of the condition to occur cannot support any breaches of the Loans, and the conditional nature of the event precludes any claim for fraud.

WHEREFORE, Defendants Lake Forest Partners, LLC and Christopher T. French pray that this Court enter a judgment in their favor, awarding them costs, attorneys' fees, and providing them with such other relief as this Court deems just and proper.

Dated: February 11, 2008

Respectfully submitted,

LAKE FOREST PARTNERS, LLC and CHRISTOPHER T. FRENCH

By: /s/ Martin J. Bishop
One of their attorneys

Martin J. Bishop (No. 06269425)
Daniel A. Dingerson (No. 6282754)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL 60610-4764
312-832.4500
312-832.4700 Fax