Exhibit 1

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR. | ) | |
| (USAF, Retired), | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  07 C 6317 |
| | ) | |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| LAKE FOREST PARTNERS, LLC, | ) | |
| a Nevada Corporation; CHRISTOPHER | ) | |
| T. FRENCH, ALBERT J. MONTANO | ) | |
| and MARK D. WEISSMAN, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR
### THE PRODUCTION OF DOCUMENTS (SET 1) TO DEFENDANTS
### LAKE FOREST PARTNERS, LLC AND CHRISTOPHER T. FRENCH

General John T. Chain, Jr. ("General Chain"), by his attorneys, and pursuant to

Fed. R. Civ. P. 26, 33 and 34, directs the following Interrogatories and Requests for the

Production of Documents to Defendants Lake Forest Partners, LLC ("Lake Forest") and

Christopher T. French ("French") to be answered fully and completely under oath within

30 days, or no later than April 10, 2008.

### DEFINITIONS

The defined terms used herein shall have the same meaning as the defined terms

used in the Complaint, filed on or about November 7, 2007.

### INTERROGATORIES

1.    Identify each and every person who provided information that was used in

the preparation of the answers to these Interrogatories and Request for the Production of

Documents, stating each person's name, address, telephone number and a description of the information provided.

2.    Identify each and every person who Lake Forest and/or French may call as a witness at any hearing or trial relating to this case, stating each person's name, address, telephone number and a description of the testimony each person would provide.

3.    Identify each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), identifying the name of the financial institution, the address of the financial institution, the name of the account holder, the account numbers and the purpose of each account.

4.    Identify each and every use of the money lent by General Chain to Lake Forest, identifying the amount of each expenditure that was made in whole, or in part, with money lent by General Chain, the date of the expenditure, the nature of the expenditure, the recipient of the expenditure, and the purpose of the expenditure. This interrogatory specifically requires French and Lake Forest to trace each and every dollar that General Chain lent to Lake Forest.

5.    Identify each and every person or entity that has been offered or promised (whether such offers were contingent or not) a lot or lots on Royal Island. For each such offer or promise, state the name of each offeree, the date of each offer, whether the offer was in writing or oral, the terms of the offer or promise, whether the offer or promise was accepted and the date the offer or promise was accepted.

6.    Has French and/or Lake Forest been contacted by any law enforcement agency regarding their solicitations for loans and/or investments in any real estate

projects, including, but not limited to, the Royal Island project?  If the answer is anything

other than an unqualified "no," then for each such contact, state the date of the contact, the

agency making contact and the information provided by French and/or Lake Forest to all

law enforcement agencies.

      7.    State with particularity each and every fact that supports Lake Forest's and

French's claim that they had authority to promise (even on a contingent basis) General

Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

      8.    Was Lake Forest ever party to an agreement or agreements whereby it

would acquire Royal Island?  If the answer is anything other than an unqualified no, then

state the parties to the agreement(s), the date of the agreement, whether the agreement(s)

was (were) in writing or oral, and the terms of the agreement(s).

      9.    State with particularity each and every fact that supports Lake Forest's and

French's claim that Lake Forest did not ask General Chain to make an initial loan of $3

million to Lake Forest.

      10.    State with particularity each and every fact that supports Lake Forest's and

French's claim that "Chain offered to make an additional loan to Lake Forest for use by

Lake Forest for its business activities, which included aspects of the marketing and

development of Royal Island" as set forth in your answer to paragraph 21 of the

Complaint, including the date(s) of General Chain's offer(s), the person(s) to whom

General Chain allegedly made the offer(s), whether the offer(s) were in writing or oral,

and the terms of the offer(s).

      11.    State with particularity each and every fact that supports Lake Forest's and

French's claim that Loan Agreement 1 is not valid and enforceable.

3

12.     State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

13.     Identify all persons or entities that are creditors of Lake Forest, French, GPVI and/or any other entities in which French has an ownership interest.  For each creditor identified, state the name of the creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

14.     Was any of the money that Lake Forest obtained from General Chain used to pay any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI?  If the answer is anything other than an unqualified "no," then state the name of the lender/investor, the amount of money that was repaid to the lender/investor, the date of repayment of the lender/investor, the method of payment (*i.e.*, cash, check, wire transfer, etc.), and the financial institution from which the money was used to pay the lender/investor.

15.     Identify each and every fact that supports your claim that the acquisition of Royal Island was not achieved.

16.     Identify each and every term of Loan Agreement 1 and Loan Agreement 2 that you claim is "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."  For each such term, state: (1) your interpretation of such term and what you believe was the intent of such term; and (2) the person who drafted each term.

4

17.    Identify the person or persons that had any role whatsoever in drafting Loan Agreements 1 and 2, stating each person's name, address, telephone number, and role in drafting Loan Agreement 1 and 2.

18.    Identify each and every fact that supports your Second Affirmative Defense.

19.    Identify each and every fact that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

20.    Is it your contention and/or belief that any "of the Defendants or parties to the Loans" held a contract and/or option to purchase Royal Island? If the answer to this question is anything other than an unqualified no, then identify the date of the contract/option agreement, the parties to the contract/option agreement, whether the contract/option agreement was written or oral, and the terms of the contract/option agreement.

21.    Is it your contention that Lake Forest, French, GPVI and/or any other entity affiliated with French is not entitled to any lots on Royal Island? If the answer is anything other than an unqualified "yes," then identify each and every fact for your claim that Lake Forest, French, GPVI and/or any other entity affiliate with French is or are entitled to lots on Royal Island and state how many lots each such individual or entity is entitled to.

22.    Identify each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party. For each such lawsuit and arbitration, identify the parties to the proceeding, the tribunal in which the proceeding is or was pending, the nature of the litigation and whether a judgment or award has been entered.

5

23. If any of your answers to any of Plaintiff's Requests for Admission (Set 2) served on March 10, 2008, constitute anything other than an unqualified admission, state with particularity and in detail the complete factual basis for your refusal to give an unqualified admission. Your answer should include, without limitation, an identification of every witness, document, or other tangible item that supports your refusal to give an unqualified admission to the particular Request for Admission.

## DOCUMENT REQUESTS

1. Produce all documents that are referred to or were used in any manner whatsoever to answer the foregoing interrogatories and/or answering the Complaint.

2. Produce all documents that Lake Forest and/or French will use at any trial or hearing of this matter.

3. Produce any and all documents relating to each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), for the time period January 1, 2004 to the present, including, all account statements, checks, cancelled checks, ledgers, check registers, and accounting records. This request specifically includes a request for all electronically stored information and General Chain requests that Lake Forest and French produce the native files for all such electronically stored information.

4. Produce any and all documents relating to each and every use of the money lent by General Chain to Lake Forest.

5. Produce any and all documents relating to any and all communications between Lake Forest (and its agents) and General Chain.

6.    Produce any and all documents relating to each and every person or entity that has been offered or promised (whether such offer was contingent or not) a lot or lots on Royal Island by Lake Forest, French, GPVI and/or persons acting on behalf of Lake Forest, French and/or GPVI.

7.    Produce any and all documents relating to any communications between French and/or Lake Forest (and their agents or attorneys), on the one hand, and any law enforcement agency, on the other hand, regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project.

8.    Produce any and all documents relating to Lake Forest's and French's claim that they had authority to promise General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

9.    Produce any and all documents relating to the acquisition of Royal Island.

10.    Produce any and all documents relating to the solicitation of any and all loans to Lake Forest and/or GPVI.

11.    Produce any and all documents relating to the solicitation of any and all investments in Lake Forest and/or GPVI or any real estate projects that are or were affiliated in any way with Lake Forest, French and/or GPVI.

12.    Produce any and all documents relating to any and all communications between Lake Forest, French and/or GPVI (and their agents and attorneys), on the one hand, and any and all persons and/or entities that loaned money to Lake Forest, GPVI and/or French and/or invested money in Lake Forest, GPVI and/or any real estate project affiliated in any way whatsoever with Lake Forest and/or GPVI.

7

13.    Produce any and all documents regarding all agreements to which Lake Forest, French, and/or GPVI are or were a party that in any way relate to Royal Island.

14.    Produce any and all documents that support your contention that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint.

15.    Produce any and all documents that support Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

16.    Produce any and all documents that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

17.    Produce any and all documents that refer or relate to any and all creditors of Lake Forest, French, GPVI and/or any other entities in which French has or had an ownership interest, including, but not limited to, documents relating to the identity of each creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

18.    Produce any and all documents relating to the repayment by (or on behalf of) Lake Forest, French, GPVI and/or any entity affiliated with French to any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI.

19.    Produce any and all documents that relate to the proposed and/or actual acquisition of Royal Island.

8

20.     Produce any and all documents that support your contention that the acquisition of Royal Island was not achieved.

21.     Produce any and all documents that support your contention that certain terms of Loan Agreement 1 and Loan Agreement 2 are "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."

22.     Produce any and all documents relating to the drafting of Loan Agreements 1 and 2.

23.     Produce any and all documents that support your Second Affirmative Defense.

24.     Produce any and all documents that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

25.     Produce any and all documents relating to any and all disputes between, Lake Forest, French, GPVI and/or any other entity affiliated with French, on the one hand, and Duane Truitt, on the other hand.

26.     Produce any and all documents relating to whether Lake Forest, French, GPVI and/or any other entity affiliate with French has or have ever been entitled to lots on Royal Island and state how many lots each such person and/or entity is entitled to.

27.     Produce any and all documents relating to each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party, including, but not limited to, all pleadings, discovery, produced documents and deposition transcripts.

28.     Produce any and all deposition transcripts, recorded statements, transcripts of testimony of French, Weissman and/or Montano.

9

Dated: March 10, 2008                    GENERAL JOHN T. CHAIN, JR.


                                         By: _____
                                              One of His Attorneys


Jonathan M. Cyrluk
Henry Baskerville
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Phone: 312-338-0200
Fax:    312-338-0070
cyrlukj@stetleranduffy.com
hbasker@stetleranduffy.com

## CERTIFICATE OF SERVICE

I, Henry M. Baskerville, an attorney, certify under penalty of perjury that I caused a copy of the foregoing **Plaintiff's Interrogatories and Requests for the Production of Documents (Set 1) to Defendants Lake Forest Partners, LLC and Christopher T. French** to be served on:

> Martin J. Bishop
> Daniel A. Dingerson
> Foley & Lardner, LLP
> 321 N. Clark Street, Suite 2800
> Chicago, IL 60610

by facsimile transmission to 312-832-4700 and email delivery, and

> Albert J. Montano
> 1990 Skokie Boulevard
> Highland Park, IL 60035

> Scott Weissman
> 3238 North Lakewood
> Chicago, IL 60657

by U.S. Mail, First Class Postage Prepaid, this 10th day of March, 2008.

_____
Henry M. Baskerville

11

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR. | ) | |
| (USAF, Retired), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 6317 |
| | ) | |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| LAKE FOREST PARTNERS, LLC, | ) | |
| a Nevada Corporation; CHRISTOPHER | ) | |
| T. FRENCH, ALBERT J. MONTANO | ) | |
| and MARK D. WEISSMAN, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REQUESTS FOR ADMISSIONS (SET 2) TO DEFENDANTS
LAKE FOREST PARTNERS, LLC AND CHRISTOPHER T. FRENCH**

General John T. Chain, Jr. ("General Chain"), by his attorneys, and pursuant to

Fed. R. Civ. P. 36, directs the following Requests for Admissions to Lake Forest Partners,

LLC ("Lake Forest") and Christopher T. French ("French") to be answered fully and

completely under oath within 30 days, or no later than April 10, 2008.

## DEFINITIONS

The defined terms used herein shall have the same meaning as the defined terms

used in the Complaint, filed on or about November 7, 2007.

## REQUESTS FOR ADMISSIONS

1.     Admit that the document attached hereto as Exhibit 1 is a true and correct

copy of an agreement entered into between General Chain, on the one hand, and Lake

Forest, French, Albert Montano and Scott Weissman, on the other hand, on or about

August 11, 2005 ("Loan Agreement 1").

2.      Admit that Lake Forest (including, its agents and attorneys) drafted Loan Agreement 1.

3.      Admit that General Chain loaned $3 million to Lake Forest on or about August 11, 2005.

4.      Admit that Lake Forest agreed to repay General Chain the $3 million he loaned to Lake Forest pursuant to Loan Agreement 1 on or before August 14, 2006.

5.      Admit that Lake Forest agreed to pay interest of 20% per annum on the $3 million General Chain lent to Lake Forest pursuant to Loan Agreement 1.

6.      Admit that Lake Forest agreed to repay General Chain the principal amount of $3 million, plus 20% interest, plus an additional 3% interest in the event Lake Forest defaulted under Loan Agreement 1.

7.      Admit that Lake Forest has not paid any amounts to General Chain relating to Loan Agreement 1.

8.      Admit that Lake Forest has not repaid any portion of the $3 million General Chain let to Lake Forest on or about August 11, 2005.

9.      Admit that the document attached hereto as Exhibit 2 is a true and correct copy of an agreement entered into between General Chain, on the one hand, and Lake Forest, French, Albert Montano and Scott Weissman, on the other hand, on or about October 26, 2005 ("Loan Agreement 2").

10.     Admit that Lake Forest (including, its agents and attorneys) drafted Loan Agreement 2.

11.     Admit that General Chain loaned $500,000 to Lake Forest on or about October 26, 2005.

2

12.     Admit that Lake Forest agreed to repay General Chain the $500,000 he loaned to Lake Forest pursuant to Loan Agreement 2 on or before January 26, 2006.

13.     Admit that Lake Forest agreed to pay interest of 10% per 90 days on the $500,000 General Chain lent to Lake Forest pursuant to Loan Agreement 2.

14.     Admit that Lake Forest agreed to repay General Chain the principal amount of $500,000, plus 10% interest per 90 days, plus an additional 3% interest in the event Lake Forest defaulted under Loan Agreement 2.

15.     Admit that Lake Forest has not paid any amounts to General Chain relating to Loan Agreement 2.

16.     Admit that Lake Forest has not repaid any portion of the $500,000 General Chain lent to Lake Forest on or about October 26, 2005.

17.     Admit that Lake Forest never had any direct rights to any lots on Royal Island.

18.     Admit that Lake Forest never was party to a written agreement to acquire Royal Island.

19.     Admit that Lake Forest is a member of Royal Island, LLC.

20.     Admit that Royal Island, LLC is a member of a partnership that owns Royal Island.

21.     Admit that Royal Island was acquired pursuant to an agreement that Great Prairie Ventures, Inc. ("GPVI") assigned to Royal Island, LLC.

22.     Admit that Royal Island, LLC is entitled to more than two lots on Royal Island.

23.     Admit that French, Lake Forest and/or GPVI offered lots on Royal Island to other persons and entities besides General Chain.

3

Dated: March 10, 2008                    GENERAL JOHN T. CHAIN, JR.


By: _____
        One of His Attorneys


Jonathan M. Cyrluk
Henry Baskerville
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Phone: 312-338-0200
Fax:    312-338-0070
cyrlukj@stetlerandduffy.com
hbasker@stetlerandduffy.com

4

## CERTIFICATE OF SERVICE

I, Henry M. Baskerville, an attorney, certify under penalty of perjury that I caused a copy of the foregoing **Plaintiff's Requests for Admissions (Set 2) to Defendants Lake Forest Partners, LLC and Christopher T. French** to be served on:

>Martin J. Bishop
>Daniel A. Dingerson
>Foley & Lardner, LLP
>321 N. Clark Street, Suite 2800
>Chicago, IL 60610

by facsimile transmission to 312-832-4700 and email delivery, and

>Albert J. Montano
>1990 Skokie Boulevard
>Highland Park, IL 60035

>Scott Weissman
>3238 North Lakewood
>Chicago, IL 60657

by U.S. Mail, First Class Postage Prepaid, this 10th day of March, 2008.

_____
Henry M. Baskerville

5

Exhibit 1

# LOAN AGREEMENT

This Loan Agreement is made and executed this 11th day of August, 2005 by and among  John T. Chain, Jr. residing at 142 Spring Creek  Lane, Edwards, Colorado 81652, hereinafter "Lender", Mark D. Weissman, individually, hereinafter referred to as "Weissman", Albert J. Montano, individually, hereinafter referred to as "Montano", Christopher T. French, individually, hereinafter referred to as "French",  and collectively as Lake Forest Partners, LLC, Hereinafter referred to as "LFP".

RECITALS:

WHEREAS Lender is willing to loan LFP Three Million and no/100 Dollars ($3,000,000.00) and Lake Forest Partners, LLC is desirous of borrowing Three Million and no/100 Dollars ($3,000,000.00) from Lender.

WHEREAS LFP agrees to repay Lender said Three Million and no/100 Dollars ($3,000,000.00) pursuant to the terms and conditions set forth below.

WHEREAS as an inducement for Lender to loan LFP Three Million and no/100 Dollars ($3,000,000.00) so LFP can use such monies to fund the partnership activities to include aspects of Royal Island marketing and development; Weissman, Montano and French hereby guarantee the payment of such amount in full, including principal and interest as set forth below.

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.  The recitals set forth above are hereby incorporated by reference and made a part hereof as if fully rewritten herein.

2.  Lender will, upon execution of this Agreement, loan LFP $3,000,000.00 (the "Loan").  LFP agrees to repay the Loan plus Interest set at 20% for the term of the Loan (the "Interest") pursuant to the terms set forth herein.

3.  The parties hereto acknowledge and agree that the Loan is unsecured. However, Weissman, Montano and French hereby personally, irrevocably, absolutely, unconditionally, jointly and severally guarantee the timely repayment of the Loan plus the Interest due on the Loan and any collection costs incurred by Lender in collecting any such amounts.

4.  This Loan Agreement is a legal agreement, intended to be binding upon each of the parties hereto.

5.  The term of the Loan shall be for 1 year from the date hereof, due and payable in full plus Interest on or before August 14, 2006.

6.  In the event of default, interest shall be payable on the outstanding amount of the Loan at the Interest rate plus three percent (3%).

7.  Once the acquisition of Royal Island is achieved, then the Lender will Receive a home building site (worth a list price of $2 to $3 Million) as Additional interest return.  The site shall be a "standard" site as defined  in the Purchase and Sale Agreement.

8.  LFP promises to pay all costs of collection in case payment shall not be made at maturity; and further promises, in case suit is instituted to collect the Loan or the Interest, or any portion thereof, to pay such reasonable attorney's fees in such suit.

9.  This Loan Agreement shall be interpreted in accordance with Illinois law without regard to the provisions of the conflicts of law.

10. Weissman's address for purposes of any notifications shall be 3238 North Lakewood, Chicago, IL 60659, Telephone 773-348-0639. Montano's address for notifications shall be 249 Market Square, Lake Forest, IL 60045. Office telephone 847-234-3434. French's address for notification shall be c/o Tec Development International, 27 North Wacker Drive, Suite 410, Chicago, IL 60606. Telephone 773-320-9530. LFP is the same as Montano's.

11. Wiring instructions: Lake Forest Partners LLC , Harris Bank, 824 North Western Ave., Lake Forest, IL 60045. ABA # 071025661  Account # 2910373329.

12. This Loan Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter contained herein and may not be altered or amended or nor may any provision hereof be waived except by an agreement in writing executed by each of the parties hereto.

In witness whereof, the undersigned have executed this Agreement as of the date set forth above.

By _____          By _____
    John T. Chain, Jr.                       Albert J. Montano


By _____          By _____
    Mark D. Weissman                         Christopher T. French


By _____
    Lake Forest Partners, LLC, Managing Member

Exhibit 2

## LOAN AGREEMENT

This Loan Agreement is made and executed this 26th day of Oct, 2005 by and among  John T. Chain, Jr. residing at 142 Spring Creek  Lane, Edwards, Colorado 81652, hereinafter "Lender", Mark D. Weissman, individually, hereinafter referred to as "Weissman", Albert J. Montano, individually, hereinafter referred to as "Montano", Christopher T. French, individually, hereinafter referred to as "French",  and collectively as Lake Forest Partners, LLC, Hereinafter referred to as "LFP".

RECITALS:

WHEREAS Lender is willing to loan LFP Five Hundred Thousand and no/100  Dollars ($500,000.00) and Lake Forest Partners, LLC is desirous of borrowing Five Hundred Thousand and no/100 Dollars ($500,000.00) from Lender.

WHEREAS LFP agrees to repay Lender said Five Hundred Thousand and  no/100 Dollars ($500,000.00) pursuant to the terms and conditions set forth  below.

WHEREAS as an inducement for Lender to loan LFP Five Hundred Thousand and no/100 Dollars ($500,000.00) so LFP can use such monies to fund the partnership activities to include aspects of Royal Island marketing and development; Weissman, Montano and French hereby guarantee the payment of such amount in full, including principal and interest as set forth below.

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.  The recitals set forth above are hereby incorporated by reference and made a part hereof as if fully rewritten herein.

2.  Lender will, upon execution of this Agreement, loan LFP $500,000.00 (the "Loan").  LFP agrees to repay the Loan plus Interest set at 10% for the term of the Loan (the "Interest") pursuant to the terms set forth herein.

3.  The parties hereto acknowledge and agree that the Loan is unsecured. However, Weissman, Montano and French hereby personally, irrevocably, absolutely, unconditionally, jointly and severally guarantee the timely repayment of the Loan plus the Interest due on the Loan and any collection costs incurred by Lender in collecting any such amounts.

4.  This Loan Agreement is a legal agreement, intended to be binding upon each of the parties hereto.

5.  The term of the Loan shall be for 90 days from the date hereof, due and payable in full plus Interest on or before Jan. 26, 2006.

6.  In the event of default, interest shall be payable on the outstanding amount of the Loan at the Interest rate plus three percent (3%).

7.  Once the acquisition of Royal Island is achieved, then the Lender will Receive a home building site (worth a list price of $2 to $3 Million) as Additional interest return.  The site shall be a "standard" site as

defined in the Purchase and Sale Agreement.

8.  LFP promises to pay all costs of collection in case payment

shall not be made at maturity; and further promises, in case suit is

instituted to collect the Loan or the Interest, or any portion thereof,

to pay such reasonable attorney's fees in such suit.

9.  This Loan Agreement shall be interpreted in accordance with Illinois

law without regard to the provisions of the conflicts of law.

10.  Weissman's address for purposes of any notifications shall be 3238

North Lakewood, Chicago, IL 60659, Telephone 773-348-0639.

Montano's address for notifications shall be 249 Market Square,

Lake Forest, IL 60045. Office telephone 847-234-3434. French's

address for notification shall be c/o Tec Development International,

27 North Wacker Drive, Suite 410, Chicago, IL 60606. Telephone

773-320-9530. LFP is the same as Montano's.

11.  Wiring instructions: Lake Forest Partners LLC , Harris Bank,

824 North Western Ave., Lake Forest, IL 60045. ABA #

071025661  Account # 2910373329.

12.  This Loan Agreement constitutes the entire agreement among the

parties hereto pertaining to the subject matter contained herein

and may not be altered or amended or nor may any provision

hereof be waived except by an agreement in writing executed by

each of the parties hereto.

In witness whereof, the undersigned have executed this Agreement as of the date set forth above.

By _____
Lender

By _____
Albert J. Montano

By _____
Mark D. Weissman

By _____
Christopher T. French

By _____
Lake Forest Partners, LLC, Managing Member

Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR., | ) | |
| (USAF, Retired), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 6317 |
| | ) | |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| LAKE FOREST PARTNERS, LLC, | ) | |
| A Nevada Corporation; CHRISTOPHER | ) | |
| T. FRENCH, ALBERT J. MONTANO | ) | |
| and MARK D. WEISSMAN, M.D., | ) | |

**Defendants.**

### ANSWERS TO PLAINTIFF'S INTERROGATORIES AND REQUESTS
### FOR PRODUCTION OF DOCUMENTS (SET 1) TO DEFENDANT
### LAKE FOREST PARTNERS, LLC

Defendants French and Lake Forest Partners, LLC by and through its attorneys, and submits their Answers to Plaintiff's Interrogatories and Requests for Production of Documents (Set 1):

### INTERROGATORIES

1.      Identify each and every person who provided information that was used in the preparation of the answers to these Interrogatories and Request for the Production of Documents, stating each person's name, address, telephone number and a description of the information provided.

**ANSWER**:   Christopher French, who resides at 739 Timber Ridge, Fontana,

Wisconsin, 53125; and Albert Montano, who resides at 249 Market Square, Lake Forest, IL

60045.

2.      Identify each and every person who Lake Forest and/or French may call as a witness at any hearing or trial relating to this case, stating each person's name, address, telephone number and a description of the testimony each person would provide.

**ANSWER**:   Defendants do not yet know who they may call at trial in this cause.

However, Defendants may call Christopher French, Albert Montano, Mark Weissman, and

Warren Stamm. Each of these four individuals has knowledge regarding the "Loan Agreements" in question, as well as the development of Royal Island. Lake Forest and French reserve the right to supplement their response to this interrogatory as trial approaches.

3.    Identify each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), identifying the name of the financial institution, the address of the financial institution, the name of the account holder, the account numbers and the purpose of each account.

**ANSWER**:    Christopher French has joint personal checking account with his wife at LaSalle Bank, identified by account number DDA 5305689969. Lake Forest and GPVI no longer maintain open accounts.

4.    Identify each and every use of the money lent by General Chain to Lake Forest, identifying the amount of each expenditure that was made in whole, or in part, with money lent by General Chain, the date of the expenditure, the nature of the expenditure, the recipient of the expenditure, and the purpose of the expenditure. This interrogatory specifically requires French and Lake Forest to trace each and every dollar that General Chain lent to Lake Forest.

**ANSWER**:    The money lent by Chain to Lake Forest was placed into a common fund and intermingled with funds provided by other investors and lenders. Therefore, when money was spent, it is impossible to identify with particularity which moneys were those lent specifically by Chain, and which funds were provided to Lake Forest by other sources. In short, it is not possible to specifically trace the funds transferred to Lake Forest by General Chain.

All funds expended by Lake Forest were used for Royal Island-related projects and expenditures. Financial statements are currently in process by a Certified Public Accountant. Draft financial statements provided by Lake Forest's in-house accountant are being produced pursuant to the document production requests.

5.    Identify each and every person or entity that has been offered or promised (whether such offers were contingent or not) a lot or lots on Royal Island. For each such offer or promise, state the name of each offeree, the date of each offer, whether the offer was in writing or oral, the terms of the offer or promise, whether the offer or promise was accepted and the date the offer or promise was accepted.

**ANSWER**:    The following persons were offered lots, contingent upon the successful acquisition of Royal Island:  John Borling; General Chain; Tobias; Randy Miles; and each member of Royal Island, LLC.  The dates and terms of such offers are contained in the documents being produced in response to Plaintiff's request to produce documents.

6.    Has French and/or Lake Forest been contacted by any law enforcement agency regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project? If the answer is anything other than an unqualified "no," then for each such contact, state the date of the contact, the agency making contact and the information provided by French and/or Lake Forest to all law enforcement agencies.

**ANSWER**:    No.

7.    State with particularity each and every fact that supports Lake Forest's and French's claim that they had authority to promise (even on a contingent basis) General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

**ANSWER**:    The Royal Island, LLC Agreement allocated four lots to Lake Forest on a contingent basis, to be transferred to Lake Forest on the successful acquisition of Royal Island.

8.    Was Lake Forest ever party to an agreement or agreements whereby it would acquire Royal Island? If the answer is anything other than an unqualified no, then state the parties to the agreement(s), the date of the agreement, whether the agreement(s) was (were) in writing or oral, and the terms of the agreement(s).

**ANSWER**:    No.

9.    State with particularity each and every fact that supports Lake Forest's and French's claim that Lake Forest did not ask General Chain to make an initial loan of $3 million to Lake Forest.

3

**ANSWER**:    On information and belief, John Borling solicited General Chain's participation; Lake Forest did not.

10.    State with particularity each and every fact that supports Lake Forest's and French's claim that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint, including the date(s) of General Chain's offer(s), the person(s) to whom General Chain allegedly made the offer(s), whether the offer(s) were in writing or oral, and the terms of the offer(s).

**ANSWER**:    As part of a verbal discussion between Chain and Montano, Chain agreed to make a loan after discussions regarding the same with Montano.

11.    State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

**ANSWER**:    The face of Loan Agreement 1 speaks for itself.  It is the contention of Lake Forest and French that the terms of Loan Agreement 1 are ambiguous.

12.    State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

**ANSWER**:    The face of Loan Agreement 2 speaks for itself.  It is the contention of Lake Forest and French that the terms of Loan Agreement 2 are ambiguous.

13.    Identify all persons or entities that are creditors of Lake Forest, French, GPVI and/or any other entities in which French has an ownership interest. For each creditor identified, state the name of the creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

**ANSWER**:    As previously stated in response to interrogatory 4, financial statements for Lake Forest, French, and GPVI are currently in process by a Certified Public Accountant.

Draft financial statements provided by Lake Forest's in-house accountant are being produced pursuant to the document production requests.

Lake Forest's creditors include, but are not limited to, Cynthia Craig, Tobias, and Moss.

French's creditors include, but are not limited to, Visa, Mastercard, and American Express. Mr. French does not currently have a mortgage.

French has an ownership interest in an entity known as TEC Development. TEC has a number of creditors related to the Biscayne Bay development project, as well as IRS tax liens involved with that project.

14.    Was any of the money that Lake Forest obtained from General Chain used to pay any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI? If the answer is anything other than an unqualified "no," then state the name of the lender/investor, the amount of money that was repaid to the lender/investor, the date of repayment of the lender/investor, the method of payment (*i.e.*, cash, check, wire transfer, etc.), and the financial institution from which the money was used to pay the lender/investor.

**ANSWER**:    As previously stated in response to Interrogatory 4, the money lent by Chain to Lake Forest was placed into a common fund and intermingled with funds provided by other investors and lenders. Therefore it is impossible to determine which moneys spent on behalf of Lake Forest came from which funding sources.

15.    Identify each and every fact that supports your claim that the acquisition of Royal Island was not achieved.

**ANSWER**:    Royal Island, LLC did not acquire Royal Island, pursuant to Paragraph 7 of Loan Agreements 1 and 2.

16.     Identify each and every term of Loan Agreement 1 and Loan Agreement 2 that you claim is "indefinite, unclear and do not provide the court with the means of determining the intent of the parties." For each such term, state: (1) your interpretation of such term and what you believe was the intent of such term; and (2) the person who drafted each term.

**ANSWER**:     As stated in response to Interrogatory #17, Albert Montano drafted Loan

Agreements 1 and 2 by modifying a form agreement he had used in prior business dealings.

Reasonable inquiries did not elicit the identity of who originally drafted the form agreement.

17.     Identify the person or persons that had any role whatsoever in drafting Loan Agreements 1 and 2, stating each person's name, address, telephone number, and role in drafting Loan Agreement I and 2.

**ANSWER**:     Albert Montano drafted Loan Agreements 1 and 2 by modifying a form

agreement he had used in prior business dealings.  Reasonable inquiries did not elicit the identity

of who originally drafted the form agreement.

18.     Identify each and every fact that supports your Second Affirmative Defense.

**ANSWER**:     See response to Interrogatory #16.

19.     Identify each and every fact that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

**ANSWER**:     Neither French, nor Montano, nor Weissman, nor Lake Forest Partners,

LLC, acquired Royal Island, LLC pursuant to Paragraph 7 of Loan Agreements 1 and 2.  On

information and belief, Plaintiff was aware of this fact or reasonably should have known that the

deal never closed based upon his dealings with the parties.

20.     Is it your contention and/or belief that any "of the Defendants or parties to the Loans" held a contract and/or option to purchase Royal Island? If the answer to this question is anything other than an unqualified no, then identify the date of the contract/option agreement, the parties to the contract/option agreement, whether the contract/option agreement was written or oral, and the terms of the contract/option agreement.

**ANSWER**:    None of the defendants or parties to the loans held a contract and/or option to purchase Royal Island.

21.    Is it your contention that Lake Forest, French, GPVI and/or any other entity affiliated with French is not entitled to any lots on Royal Island? If the answer is anything other than an unqualified "yes," then identify each and every fact for your claim that Lake Forest, French, GPVI and/or any other entity affiliate with French is or are entitled to lots on Royal Island and state how many lots each such individual or entity is entitled to.

**ANSWER**:    Under the Royal Island, LLC Agreement, Lake Forest and GPVI had a contingent right to receive lots on the island provided that Royal Island, LLC acquired Royal Island.  Royal Island, LLC did not acquire Royal Island, and therefore those contingent rights never vested, and neither Lake Forest, GPVI, or French have a right to an island.

22.    Identify each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party. For each such lawsuit and arbitration, identify the parties to the proceeding, the tribunal in which the proceeding is or was pending, the nature of the litigation and whether a judgment or award has been entered.

**ANSWER**:

Andrew Tobias v. Lake Forest, French,, Montano, Weissman, and MEA Management
    Circuit Court of Cook County
    Judgment has been entered.

Robert Moss v. Lake Forest, French, Montano, and Weissman
    Circuit Court of Cook County
    Judgment has been entered

Cynthia Craig v. Lake Forest, French, Montano, and Weissman
    Circuit Court of Cook County
    Judgment has been entered

John Borling v. Lake Forest, French, Montano, and Weissman
    Circuit Court of Winnebago County
    No Judgment has been entered

Greystone Business Credit II v. M/V Babe, Lake Forest Partners Yacht, Ltd., Lake Forest,
    French, Montano, and Weissman
    Southern District of Florida

Judgment has been entered.

Remington Partners v. Weissman and French
    Marin County Superior Court
    No Judgment has been entered.

Duane J. Truitt v. GPVI and Lake Forest
    American Arbitration Association
    No Judgment or award has been entered.

23.    If any of your answers to any of Plaintiff's Requests for Admission (Set 2) served on March 10, 2008, constitute anything other than an unqualified admission, state with particularity and in detail the complete factual basis for your refusal to give an unqualified admission. Your answer should include, without limitation, an identification of every witness, document, or other tangible item that supports your refusal to give an unqualified admission to the particular Request for Admission.

**ANSWER**:    Request to Admit #17: Lake Forest had a contingent right to several lots on the Islands. That right was contingent on Royal Island, LLC acquiring the Islands in question. Therefore, Royal Island had a right to several lots on the Islands, but that right did not vest because the condition precedent was not fulfilled.

Request to Admit #22: See response to Interrogatory #15.

Request to Admit #23: Lake Forest Partners, LLC did not "offer" lots on the Islands to Chain or any other person. It offered contingent rights to lots on the Islands, with the condition precedent that Royal Island, LLC succeed in acquiring the Islands. Therefore it is inaccurate to state that Lake Forest Partners, LLC "offered" lots on the Islands to Chain, or to others.

## DOCUMENT REQUESTS

1.    Produce all documents that are referred to or were used in any manner whatsoever to answer the foregoing interrogatories and/or answering the Complaint.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

8

2.      Produce all documents that Lake Forest and/or French will use at any trial or hearing of this matter.

**ANSWER:**      Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

3.      Produce any and all documents relating to each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), for the time period January 1, 2004 to the present, including, all account statements, checks, cancelled checks, ledgers, check registers, and accounting records. This request specifically includes a request for all electronically stored information and General Chain requests that Lake Forest and French produce the native files for all such electronically stored information.

**ANSWER:**      Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

4.      Produce any and all documents relating to each and every use of the money lent by General Chain to Lake Forest.

**ANSWER:**      Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

5.      Produce any and all documents relating to any and all communications between Lake Forest (and its agents) and General Chain.

**ANSWER:**      Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

6.      Produce any and all documents relating to each and every person or entity that has been offered or promised (whether such offer was contingent or not) a lot or lots on Royal Island by Lake Forest, French, GPVI and/or persons acting on behalf of Lake Forest, French and/or GPVI.

**ANSWER:**      Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

7.      Produce any and all documents relating to any communications between French and/or Lake Forest (and their agents or attorneys), on the one hand, and any law enforcement agency, on the other hand, regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project.

**ANSWER**:      Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

8.      Produce any and all documents relating to Lake Forest's and French's claim that they had authority to promise General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

**ANSWER**:      Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

9.      Produce any and all documents relating to the acquisition of Royal Island.

**ANSWER**:      Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

10.      Produce any and all documents relating to the solicitation of any and all loans to Lake Forest and/or GPVI.

**ANSWER**:      Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

11.      Produce any and all documents relating to the solicitation of any and all investments in Lake Forest and/or GPVI or any real estate projects that are or were affiliated in any way with Lake Forest, French and/or GPVI.

**ANSWER**:      Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

12.      Produce any and all documents relating to any and all communications between Lake Forest, French and/or GPVI (and their agents and attorneys), on the one hand, and any and all persons and/or entities that loaned money to Lake Forest, GPVI and/or French and/or invested

money in Lake Forest, GPVI and/or any real estate project affiliated in any way whatsoever with Lake Forest and/or GPVI.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

13.    Produce any and all documents regarding all agreements to which Lake Forest, French, and/or GPVI are or were a party that in any way relate to Royal Island.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

14.    Produce any and all documents that support your contention that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

15.    Produce any and all documents that support Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

16.    Produce any and all documents that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

17.    Produce any and all documents that refer or relate to any and all creditors of Lake Forest, French, GPVI and/or any other entities in which French has or had an ownership interest, including, but not limited to, documents relating to the identity of each creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such

11

payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

18.    Produce any and all documents relating to the repayment by (or on behalf of) Lake Forest, French, GPVI and/or any entity affiliated with French to any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

19.    Produce any and all documents that relate to the proposed and/or actual acquisition of Royal Island.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

20.    Produce any and all documents that support your contention that the acquisition of Royal Island was not achieved.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

21.    Produce any and all documents that support your contention that certain terms of Loan Agreement 1 and Loan Agreement 2 are "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

22.    Produce any and all documents relating to the drafting of Loan Agreements 1 and 2.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

23.    Produce any and all documents that support your Second Affirmative Defense.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

24.    Produce any and all documents that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

25.    Produce any and all documents relating to any and all disputes between, Lake Forest, French, GPVI and/or any other entity affiliated with French, on the one hand, and Duane Truitt, on the other hand.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

26.    Produce any and all documents relating to whether Lake Forest, French, GPVI and/or any other entity affiliate with French has or have ever been entitled to lots on Royal Island and state how many lots each such person and/or entity is entitled to.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

27.    Produce any and all documents relating to each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party, including, but not limited to, all pleadings, discovery, produced documents and deposition transcripts.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

28.    Produce any and all deposition transcripts, recorded statements, transcripts of testimony of French, Weissman and/or Montano.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

LAKE FOREST PARTNERS, LLC AND
CHRISTOPHER T. FRENCH

_____
One of Their Attorneys


I verify under penalty of perjury that the foregoing is true and correct.

_____
Christopher French
Lake Forest Partners, LLC


Louis D. Bernstein
Lorne T. Saeks
Christopher J. Petelle
**MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000

## CERTIFICATE OF SERVICE

I, Christopher J. Petelle, an attorney, certify that, on this 19th day of May, 2008, I caused copies of the foregoing to be served by first class mail, postage paid, and by email, to the following:

Jonathan M. Cyrluk                          Barry Greenburg
Henry Baskerville                           Law Offices of Barry H. Greenburg
Stetler & Duffy, Ltd.                       180 N. LaSalle St.
11 South LaSalle Street                     Chicago, IL  60601-2501
Suite 1200
Chicago, IL 60603

Exhibit 3

# STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

SUITE 1200
11 SOUTH LASALLE STREET
CHICAGO, ILLINOIS 60603

TELEPHONE: 312.338.0200
FACSIMILE: 312.338.0070

HENRY M. BASKERVILLE
hbasker@stetleranduffy.com

WRITER'S DIRECT DIAL
312.338.0213

March 20, 2008

**<u>Via Email and US Mail</u>**
Christopher J. Petelle
Much Shelist
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606

Re:    *General Chain v. Lake Forest Partners, LLC, et al.*, Case No. 07 C 6317

Dear Chris:

This letter comes in response to your discovery responses and the deficiencies contained therein. I believe many of your Interrogatory answers are evasive, incomplete, or otherwise unresponsive. Pursuant to Fed. R. Civ. P. 33 and 37, I request you supplement you responses to our Interrogatories by Friday, May 30, 2008.

I note that your Responses to our Document Requests state that you will produce "all responsive, non-privileged documents as are in [your clients'] possession or control," but your responses were not accompanied by any documents. When we spoke earlier today, you assured me that your document production was forthcoming. You identified three categories of documents: (1) paper documents; (2) electronic documents, and (3) emails. We are in the process of copying those paper documents you made available. The DVD of electronic files you referenced this morning just arrived. I will review it shortly. You explained some problem that were having with downloading Mr. French's emails. However, you also stated that a company called Medley (who I assume is some sort of tech company) has worked out the problem with Mr. French's emails, and hopes to have them to you after a few hours of work. You stated that you would produce them after a privilege review that was your top priority. Please produce the emails by Friday, May 23, 2008. I will comment on your production of documents after you have completed the production.

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

## **Interrogatories**

At the threshold, many of our Interrogatories were based on the statements contained in your clients' Answer and Affirmative Defenses filed on February 12, 2008 and asks for the factual basis for some of your clients' assertions therein. I recognize that you did not file that document. However, it was filed on behalf of your clients[1], and should have been supported by a good faith factual basis. If you now believe your clients' assertions in their Answer and/or Affirmative Defenses lack a factual basis or you cannot articulate a factual basis, your duty of candor to the Court obligates you to seek leave to amend your clients' Answer and/or Affirmative Defenses. With that in mind, I will attempt to articulate some of the many deficiencies in your responses to our Interrogatories. For ease of reference, the paragraphs are numbered to correspond with the Interrogatory numbers.

3.      In Interrogatory No. 3 we asked you to "[i]dentify each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), identifying the name of the financial institution, the address of the financial institution, the name of the account holder, the account numbers and the purpose of each account."

You response identifies bank account information for a single personal checking account that French maintains with his wife. You also state that Lake Forest and GPVI no longer maintain "open accounts." Your answer is not responsive to the question. Interrogatory No. 3 clearly requests "each and every financial account" not just those that are presently "open." Please supplement your response with all financial account information for the requested parties.

4.      In Interrogatory No. 4 we asked you to "[i]dentify each and every use of the money lent by General Chain to Lake Forest, identifying the amount of each expenditure that was made in whole, or in part, with money lent by General Chain, the date of the expenditure, the nature of the expenditure and the recipient of the expenditure. This interrogatory specifically requires French and Lake Forest to trace each and every dollar that General Chain lent to Lake Forest."

You response states that Lake Forest and French commingled all of the funds, making tracing of General Chain's money impossible. You further state that a CPA is in the process of drafting financial statements that will be produced shortly. Your answer is incomplete and evasive. While you may not be able to specifically trace each of General Chain's dollars, you can

---

[1]Throughout this letter, when I refer to "your clients," I mean Mr. French and Lake Forest. I recognize that you also represent certain other defendants, as they are not a party to this discovery, this letter is not directed at your clients other than French and Lake Forest.

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

provide some substance regarding where money was spent. In addition, we request you produce the bank records, including but not limited to, the bank statements for the account in which General Chain's funds were commingled with those of the other investors. Please produce these documents by May 30, 2008.

5. In Interrogatory No. 5 we asked "[i]dentify each and every person or entity that has been offered or promised (whether such offers were contingent or not) a lot or lots on Royal Island. For each such offer or promise, state the name of each offeree, the date of each offer, whether the offer was in writing or oral, the terms of the offer or promise, whether the offer or promise was accepted and the date the offer or promise was accepted."

Your response identifies four persons to whom offers of lots were made, along with each member of Royal Island, LLC. You refer to documents that you have yet to produce. However, even assuming, *arguendo*, that you had produced the referenced documents, your answer is incomplete. For example, who made these offers you reference and what were their terms? Were these offers accepted? When? Moreover, if these offers were oral, how are the documents going to answer our requests? Please provide a complete answer to Interrogatory No. 5.

7. In Interrogatory No. 7 we asked you to "[s]tate with particularity each and every fact that supports Lake Forest's and French's claim that they had authority to promise General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2."

Your response states that "[t]he Royal Island, LLC Agreement allocated four lots to Lake Forest on a contingent basis to be transferred to Lake Forest on the successful acquisition of Royal Island." Your answer is incomplete. Please provide the basis for your claim that they were entitled to those lots to give to General Chain or others. Further, Royal Island was acquired by an entity in which Royal Island, LLC is a party. Is Royal Island, LLC entitled to lots? Is it your contention that Lake Forest is entitled to any lots? If not, why? What documentation supports these contentions? Please answer Interrogatory No. 7 and provide all documents that support your response.

9. In Interrogatory No. 9 we asked you to "[s]tate with particularity each and every fact that supports Lake Forest's and French's claim that Lake Forest did not ask General Chain to make an initial loan of $3 million to Lake Forest."

Your response states that "[o]n information and belief, John Borling solicited General Chain's participation; Lake Forest did not." Your answer is non-responsive. On behalf of whom was Mr. Borling working when he allegedly solicited General Chain's participation? Please supplement your answer to Interrogatory No. 9.

3

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

10.    In Interrogatory No. 10 we asked you to "[s]tate with particularity each and every fact that supports Lake Forest's and French's claim that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint, including the date(s) of General Chain's offer(s), the person(s) to whom General Chain allegedly made the offer(s), whether the offer(s) were in writing or oral, and the terms of the offer(s)."

Your response states that "[a]s part of a verbal discussion between Chain and Montano, Chain agreed to make a loan after discussions regarding same with Montano." Your response simply does not answer the question. You clients claim in their Answer that General Chain made this offer. Yet, you refused in your response to Interrogatory No. 10 to provide any detail whatsoever regarding this alleged offer. This contention is set forth in your clients' Answer. If it has factual support, please provide that factual support. If not, you are obligated to seek leave to amend your clients' Answer. Either way, please answer Interrogatory No. 10.

11.    In Interrogatory No. 11 we asked you to "[s]tate with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable."

Your response states that Loan Agreement 1 speaks for itself and you contend it is ambiguous. This response is utterly defective. We asked for particularity, you gave us none. For example, how is Loan Agreement 1 ambiguous? What terms do you contend are uncertain? How does this (or these) allegedly ambiguous term(s) render the Loan Agreement 1 invalid and unenforceable? Again, this Interrogatory is based on your clients' own Answer, either they have factual support for their assertions, or they do not. Your clients cannot have it both ways. Therefore, please supplement your response to Interrogatory No. 11.

12.    In Interrogatory No. 12 we asked you to "[s]tate with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable."

Your response to Interrogatory No. 12 was identical to that of Interrogatory No. 11, and is equally defective. Please fix your response to Interrogatory No. 12.

13.    In Interrogatory No. 13 we asked you to "[i]dentify all persons or entities that are creditors of Lake Forest, French, GPVI and/or any other entities in which French has an ownership interest. For each creditor identified, state the name of the creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)."

4

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

Your answer is incomplete. Your response merely references the accounting information that is allegedly being created. You identify certain creditors of both French and Lake Forest but specifically state that French and Lake Forest's creditors are not limited to the parties listed. Moreover, even for the parties you do list, you fail to provide any detail as requested above. You do not list the amount of any claims, any amounts paid, dates of any such payments, sources of funds use to make the payments, or the nature of any of these claims. You also list one entity in which French has an interest, a company called TEC Development. Is this the only entity in which French has an interest? Does he no longer have an interest in Lake Forest? What is TEC Development? What is the extent of French's ownership interest in TEC Development? You say TEC Development has creditors; Who are they? Please list the detail requested about the other creditors listed above and please provide a complete answer to Interrogatory No. 13.

14.     In Interrogatory No. 14 we asked:

Was any of the money that Lake Forest obtained from General Chain used to pay any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI? If the answer is anything other than an unqualified "no," then state the name of the lender/investor, the amount of money that was repaid to the lender/investor, the date of repayment of the lender/investor, the method of payment (*i.e.*, cash, check, wire transfer, etc.), and the financial institution from which the money was used to pay the lender/investor.

You merely refer to your answer to Interrogatory No. 4. Your answer is totally non-responsive. This is a yes or no question. Please answer yes or no. If your answer is anything other than an unqualified "no," the interrogatory asks you to provide detail. Please answer Interrogatory No. 14.

15.     Interrogatory No. 15 asks you to "[i]dentify each and every fact that supports your claim that the acquisition of Royal Island was not achieved."

Your response states only that "Royal Island, LLC did not acquire Royal Island, pursuant to Paragraph 7 of Loan Agreements 1 and 2." Your response to Interrogatory No. 15 is non-responsive, evasive, and incomplete. Your clients stated in their Answer that it is their contention that the acquisition of Royal Island was not achieved. Please state their reasoning in detail. The question does not ask whether Royal Island, LLC acquired Royal Island but rather the Interrogatory asks you for the factual support for your clients' contention that the acquisition was not achieved. As I stated above, I recognize that you did not file their Answer and Affirmative Defenses, however, your clients' must have a reasonable factual basis for alleging the facts contained in therein. You have two choices, either: (1) provide the factual basis for your clients'

5

**STETLER & DUFFY, LTD.**
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

contention in their Answer that the acquisition of Royal Island was not achieved; or (2) if you do not believe your clients had a good faith basis for making these claims, seek to amend your clients' Answer.  Moreover, what documents, if any, support your claims?  Please provide a compete answer to Interrogatory No. 15.

16.     Interrogatory No. 16 asks you to "[i]dentify each and every term of Loan Agreement 1 and Loan Agreement 2 that you claim is "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."  For each such term, state: (1) your interpretation of such term and what you believe was the intent of such term; and (2) the person who drafted each term."

This Interrogatory is based on your clients' Second Affirmative Defense.  Your resposne states that "[a]s stated in response to Interrogatory # 17, Albert Montano drafted Loan Agreements 1 and 2 by modifying a form agreement he had used in prior business dealings.  Reasonable inquiries did not elicit the identity of who originally drafted the form agreements."  Your answer is completely unresponsive to the question.  It is as if you were mistakenly responding to a different Interrogatory.  Your clients claim in their Second Affirmative Defense that certain parts of Loan Agreement 1 and Loan Agreement 2 are "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."  What term or terms do you claim is or are in definite, unclear, and does not provide the court with the means of determining  the intent of the parties?  What do you believe these indefinite and unclear terms mean?  If you no longer believe that there are indefinite terms in the Loan Agreements, seek to amend or withdraw your clients' Second Affirmative Defense.  Otherwise, please answer Interrogatory No. 16.

18.     Interrogatory No. 18 asks you to "[i]dentify each and every fact that supports your Second Affirmative Defense."

You simply referred to your response to Interrogatory No. 16.  As I stated above, your response to Interrogatory 16 is dreadfully deficient.  Please provide factual support for your clients' Second Affirmative Defense or withdraw that Affirmative Defense.

19.     Interrogatory No. 19 asks you to "[i]dentify each and every fact that supports your contention that '[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island.'"

This Interrogatory is based on your clients' Third Affirmative Defense.  Your response merely reiterates your clients' claims stated in their Third Affirmative Defense.  As stated above, this is not sufficient.  What is even more troubling is that your response to Interrogatory No. 19 states that "[o]n information and belief, General Chain was aware . . . ."  Your clients' Third Affirmative Defense is not plead on information and belief.  Are these facts that your clients

6

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

know to be true or believe to be true?  Do your clients have a good faith factual basis for making these assertions?  Again, respond completely to Interrogatory No. 19, or seek leave to amend or withdraw your clients' Third Affirmative Defense.

20.    Interrogatory No. 20 asks "[i]s it your contention and/or belief that any of the Defendants or parties to the Loans held a contract and/or option to purchase Royal Island?  If the answer to this question is anything other than an unqualified no, then identify the date of the contract/option agreement, the parties to the contract/option agreement, whether the contract/option agreement was written or oral, and the terms of the contract/option agreement."

Your response states that "[n]one of the defendants or parties to the loans held a contract and/or option to purchase Royal Island."  Your response is baffling; at minimum, it conflicts with your response to Interrogatory No. 7.  Please reconsider your response, and if you change your response to anything other than an unqualified "no," and explain – in detail – the information requested in Interrogatory No. 20, *i.e.*, the date, parties, form, and terms of the agreement(s).

21.    Interrogatory No. 21 asks "[i]s it your contention that Lake Forest, French, GPVI and/or any other entity affiliated with French is not entitled to any lots on Royal Island?  If the answer is anything other than an unqualified yes, then identify each and every fact for your claim that Lake Forest, French, GPVI and/or any other entity affiliate with French is or are entitled to lots on Royal Island and state how many lots each such entity is entitled to."

Your response states that "[u]nder the Royal Island, LLC Agreement, Lake Forest and GPVI had a contingent right tp receive lots on the island provide that Royal Island, LLC acquired Royal Island.  Royal Island, LLC did not acquire Royal Island, and therefore those contingent rights never vested, and neither Lake Forest, GPVI, or French have a right to an island."  Your response does not answer the question. Again, this is a yes or no question.  If your answer is yes, please say so.  If your answer is anything other than an unqualified "yes" then identify each and every fact which supports your claim.  Additionally, the Interrogatory did not ask whether Lake Forest, GPVI, or French had the "right to an island."  It asked whether you believe they are not entitled to lots on Royal Island.  Again, your response appears to conflict with your response to Interrogatory No. 7.  Please answer Interrogatory No. 21.

22.    Interrogatory No. 22 asks you to "[i]dentify each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party.  For each such lawsuit and arbitration, identify the parties to the proceeding, the tribunal in which the proceeding is or was pending, the nature of the litigation and whether a judgment or award has been entered."

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

You list seven lawsuits and/or arbitrations. You do not identify the parties to the proceeding, or the nature of the litigation. Please provide this information. Also, please provide the case captions – including case numbers – for these lawsuits and/or arbitrations.

23.     Interrogatory No. 23 asks "[i]f any of your answers to any of Plaintiff's Requests for Admission (Set 2) served on March 10, 2008, constitute anything other than an unqualified admission, state with particularity and in detail the complete factual basis for your refusal to give an unqualified admission. Your answer should include, without limitation, an identification of every witness, document, or other tangible item that supports your refusal to give an unqualified admission to the particular Request for Admission."

In its responses to General Chain's Requests for Admission (Set 2), Lake Forest refused to give an unqualified admission in response to Requests Nos. 1, 2, 3, 9, 10, 11, 17, 18, 19, 22, 23.

In his responses to General Chain's Requests for Admission (Set 2), French refused to give an unqualified admission in response to Requests Nos. 1, 2, 3, 9, 10, 11, 17, 18, 19, 20, 21, 22, 23.

However, in response to Interrogatory No. 23, you only attempt to explain your clients' refusal to give an unqualified admission to Requests Nos. 17, 22, and 23. Please explain your clients' refusal to give an unqualified admission to Requests No. 1, 2, 3, 9, 10, 11, 18, 19, 20, and 21. Please provide the factual basis for your clients' refusal to give an unqualified admission to Requests for Admission Nos. 1, 2, 3, 9, 10, 11, 18, 19, 20, and 21 or seek leave to amend your clients' responses to the Requests for Admission and give an unqualified admission to each of those Requests for Admission.

Indeed, the explanations for your clients' failure to give unqualified admissions to these three Requests – 17, 22, 23 – also are deficient. <u>First</u>, you did not state on behalf of which client your purported explanations were made.

<u>Second</u>, you do not explain your denials. For example, Request for Admission No. 17 requests you to "[a]dmit that Lake Forest never had any direct rights to any lots on Royal Island." Both of your clients denied this request. Your response to Interrogatory No. 23, explains that your clients denied this Request for Admission because Lake Forest had a contingent right to buy the lots. I take this to mean that you believe that a contingent right equals a direct right. If that is your contention, then this position is in conflict with your responses Interrogatory No. 20 and Interrogatory No. 21. Make up your mind. Please provide the factual basis for your clients' denial of Request for Admission No. 17 or seek leave to amend your clients' responses to the Requests for Admission and admit No. 17.

8

STETLER & DUFFY, LTD.
ATTORNEYS AT LAW

Mr. Christopher J. Petelle
May 20, 2008

Request for Admission No. 22 states "[a]dmit that Royal Island, LLC is entitled to more than two lots on Royal Island." Both of your clients denied this Request. You simply refer me to your answer to Interrogatory No. 15, which, as I said above is incomplete and evasive. Please provide the factual basis for your clients' denial of Request for Admission No. 22 or amend your clients' responses to the Requests for Admission and admit No. 22.

Request for Admission No. 23 states "[a]dmit that French, Lake Forest and/or GPVI offered lots on Royal Island to other persons and entities besides General Chain." Both of your clients denied this Request. Your response states that "Lake Forest did not 'offer' lots on the Islands to Chain or any other person. It offered contingent rights to lots on the Island . . . ." Your response is evasive and not well-founded. An offer is an offer whether contingent or not. You state that your clients' denied Request for Admission No. 17 because you believe a contingent right equals a direct right, but now that it is convenient for your client, you take the contrary view of the contingency. Moreover, your response to Interrogatory No. 5 specifically states that "the following persons were offered lots, contingent upon the successful acquisition of Royal Island: John Borling, General Chain, Tobias, Randy Miles, and each member of Royal Island, LLC. . . ." Therefore, your denial conflicts with your own words on this very topic. If your clients made offers (contingent or otherwise) to these individuals and/or others, please provide the dates, terms, parties, and any documents that reference or otherwise establish these offers. In addition, please provide the factual basis for your clients' denial of Request for Admission No. 23 or seek leave to amend your clients' responses to the Requests for Admission and admit No. 23.

As I mentioned over the phone earlier, we would prefer to resolve these issues amicably and without having to seek the Court's assistance. However, your clients have had months to work on these Interrogatories. Judge Guzman ordered you to respond to them and deemed all objections waived. Rather than object, you simply provided incomplete, unresponsive, and evasive answers. Therefore, if you do not provide meaningful responses and cure the deficiencies I noted above by Friday, May 30, 2007, then we will move to compel.

Very truly yours,

Henry M. Baskerville

Copy: Jon Cyrluk

9