Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR., (USAF, Retired), | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 6317 |
| v. | ) ) | Honorable Ronald A. Guzman |
| LAKE FOREST PARTNERS, LLC, A Nevada Corporation; CHRISTOPHER T. FRENCH, ALBERT J. MONTANO and MARK D. WEISSMAN, M.D., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**SUPPLEMENTAL ANSWERS TO PLAINTIFF'S INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS (SET 1) TO DEFENDANT
LAKE FOREST PARTNERS, LLC**

Defendants French and Lake Forest Partners, LLC by and through its attorneys, and submit their Supplemental Answers to Plaintiff's Interrogatories and Requests for Production of Documents (Set 1):

**INTERROGATORIES**

1.      Identify each and every person who provided information that was used in the preparation of the answers to these Interrogatories and Request for the Production of Documents, stating each person's name, address, telephone number and a description of the information provided.

**ANSWER**:    Christopher French, who resides at 739 Timber Ridge, Fontana,

Wisconsin, 53125; and Albert Montano, who resides at 249 Market Square, Lake Forest, IL

60045.


2.      Identify each and every person who Lake Forest and/or French may call as a witness at any hearing or trial relating to this case, stating each person's name, address, telephone number and a description of the testimony each person would provide.

**ANSWER**:    Defendants do not yet know who they may call at trial in this cause.

However, Defendants may call Christopher French, Albert Montano, Mark Weissman, and

Warren Stamm. Each of these four individuals has knowledge regarding the "Loan Agreements" in question, as well as the development of Royal Island. Lake Forest and French reserve the right to supplement their response to this interrogatory as trial approaches.

3.      Identify each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), identifying the name of the financial institution, the address of the financial institution, the name of the account holder, the account numbers and the purpose of each account.

**ANSWER**:    Christopher French has joint personal checking account with his wife at LaSalle Bank, identified by account number DDA 5305689969. Lake Forest and GPVI no longer maintain open accounts.

**SUPPLEMENT**:    Lake Forest held checking accounts at Harris Bank, identified by account number 2910373329 and account number 4800302390, as well as a checking account at Lake Forest Bank and Trust identified by account number 0000421375.

GPVI held checking accounts at JP Morgan Chase Bank, N.A. identified by account number    001115001646880,    account    number    000000652734542,    account    number 000000652734492;  and account number 000000652734591.

See also account statements, which have already been produced,  which provide the address of the financial institutions in question .

4.      Identify each and every use of the money lent by General Chain to Lake Forest, identifying the amount of each expenditure that was made in whole, or in part, with money lent by General Chain, the date of the expenditure, the nature of the expenditure, the recipient of the expenditure, and the purpose of the expenditure. This interrogatory specifically requires French and Lake Forest to trace each and every dollar that General Chain lent to Lake Forest.

**ANSWER**:    The money lent by Chain to Lake Forest was placed into a common fund and intermingled with funds provided by other investors and lenders.  Therefore, when money was spent, it is impossible to identify with particularity which moneys were those lent specifically by Chain, and which funds were provided to Lake Forest by other sources.  In short, it is not possible to specifically trace the funds transferred to Lake Forest by General Chain.

All funds expended by Lake Forest were used for Royal Island-related projects and expenditures.  Financial statements are currently in process by a Certified Public Accountant. Draft financial statements provided by Lake Forest's in-house accountant are being produced pursuant to the document production requests.

**SUPPLEMENT**:  All funds lent by General Chain were used for Royal Island related projects.

5.      Identify each and every person or entity that has been offered or promised (whether such offers were contingent or not) a lot or lots on Royal Island. For each such offer or promise, state the name of each offeree, the date of each offer, whether the offer was in writing or oral, the terms of the offer or promise, whether the offer or promise was accepted and the date the offer or promise was accepted.

**ANSWER**:    The following persons were offered lots, contingent upon the successful acquisition of Royal Island:  John Borling; General Chain; Tobias; Randy Miles; and each member of Royal Island, LLC. The dates and terms of such offers are contained in the documents being produced in response to Plaintiff's request to produce documents.

**SUPPLEMENT**:  No oral solicitations or offers of lots or contingent rights to lots were made.

3

6.      Has French and/or Lake Forest been contacted by any law enforcement agency regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project? If the answer is anything other than an unqualified "no," then for each such contact, state the date of the contact, the agency making contact and the information provided by French and/or Lake Forest to all law enforcement agencies.

**ANSWER**:    No.


7.      State with particularity each and every fact that supports Lake Forest's and French's claim that they had authority to promise (even on a contingent basis) General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

**ANSWER**:    The Royal Island, LLC Agreement allocated four lots to Lake Forest on a contingent basis, to be transferred to Lake Forest on the successful acquisition of Royal Island.

**SUPPLEMENT**:  Pursuant to an oral agreement with Truitt, the other member of Royal Island, LLC, Lake Forest held the contingent right to three lots which it would receive upon the acquisition of Royal Island.


8.      Was Lake Forest ever party to an agreement or agreements whereby it would acquire Royal Island? If the answer is anything other than an unqualified no, then state the parties to the agreement(s), the date of the agreement, whether the agreement(s) was (were) in writing or oral, and the terms of the agreement(s).

**ANSWER**:    No.


9.      State with particularity each and every fact that supports Lake Forest's and French's claim that Lake Forest did not ask General Chain to make an initial loan of $3 million to Lake Forest.

**ANSWER**:    On information and belief, John Borling solicited General Chain's participation; Lake Forest did not.

**SUPPLEMENT**: John Borling had an agreement with Lake Forest whereby he agreed to help Lake Forest find individuals willing to make loans. In exchange, Borling received, *inter alia*, a contingent right to a lot on the Island.

10.     State with particularity each and every fact that supports Lake Forest's and French's claim that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint, including the date(s) of General Chain's offer(s), the person(s) to whom General Chain allegedly made the offer(s), whether the offer(s) were in writing or oral, and the terms of the offer(s).

**ANSWER**:     As part of a verbal discussion between Chain and Montano, Chain agreed to make a loan after discussions regarding the same with Montano.

**SUPPLEMENT**: Albert Montano initially solicited a second loan of $500,000 from General Chain. General Chain offered to make that additional loan, and Lake Forest Partners accepted.

11.     State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

**SUPPLEMENTAL ANSWER**: It is the position of Defendants that Loan Agreement 1, as interpreted by Chain, is not valid and enforceable. Although the interpretation of the agreement is the province of the Court, General Chain's interpretation of the contract -- that he has an unconditional right to a lot on the island -- is not reflected by the parties' agreement, and therefore is not valid or enforceable as a matter of law.

12.     State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

**ANSWER**:     **SUPPLEMENTAL ANSWER**: It is the position of Defendants that Loan Agreement 2, as interpreted by Chain, is not valid and enforceable. Although the

interpretation of the agreement is the province of the Court, General Chain's interpretation of the contract -- that he has an unconditional right to a lot on the island -- is not reflected by the parties' agreement, and therefore is not valid or enforceable as a matter of law.

13.    Identify all persons or entities that are creditors of Lake Forest, French, GPVI and/or any other entities in which French has an ownership interest. For each creditor identified, state the name of the creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim *(i.e.*, whether for money lent, money invested, services provided, etc.)

**ANSWER**:    As previously stated in response to interrogatory 4, financial statements for Lake Forest, French, and GPVI are currently in process by a Certified Public Accountant. Draft financial statements provided by Lake Forest's in-house accountant are being produced pursuant to the document production requests.

Lake Forest's creditors include, but are not limited to, Cynthia Craig, Tobias, and Moss.

French's creditors include, but are not limited to, Visa, Mastercard, and American Express. Mr. French does not currently have a mortgage.

French has an ownership interest in an entity known as TEC Development. TEC has a number of creditors related to the Biscayne Bay development project, as well as IRS tax liens involved with that project.

6

**SUPPLEMENT**: Lake Forest and French have produced financial statements and bank records which indicate to whom Lake Forest and GVPI are indebted. TEC Development is currently involved in mechanics lien litigation in Florida, and counsel for French has yet to obtain the relevant pleadings, so it is unclear to whom TEC Development is potentially indebted. However, investigation continues.

14.    Was any of the money that Lake Forest obtained from General Chain used to pay any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI? If the answer is anything other than an unqualified "no," then state the name of the lender/investor, the amount of money that was repaid to the lender/investor, the date of repayment of the lender/investor, the method of payment (*i.e.*, cash, check, wire transfer, etc.), and the financial institution from which the money was used to pay the lender/investor.

**ANSWER**:    As previously stated in response to Interrogatory 4, the money lent by Chain to Lake Forest was placed into a common fund and intermingled with funds provided by other investors and lenders. Therefore it is impossible to determine which moneys spent on behalf of Lake Forest came from which funding sources.

15.    Identify each and every fact that supports your claim that the acquisition of Royal Island was not achieved.

**ANSWER**:    Royal Island, LLC did not acquire Royal Island, pursuant to Paragraph 7 of Loan Agreements 1 and 2.

**SUPPLEMENT**: Lake Forest and French supplement their response as follows. It was the intent of the parties, when they entered into the contract, that Royal Island, LLC or a wholly owned subsidiary thereof would acquire Royal Island. Neither Royal Island, LLC nor a wholly owned subsidiary thereof acquired Royal Island.

16.    Identify each and every term of Loan Agreement 1 and Loan Agreement 2 that you claim is "indefinite, unclear and do not provide the court with the means of determining the intent of the parties." For each such term, state: (1) your interpretation of such term and what you believe was the intent of such term; and (2) the person who drafted each term.

**ANSWER:**    Albert Montano drafted Loan Agreements 1 and 2 by modifying a form agreement he had used in prior business dealings. Reasonable inquiries did not elicit the identity of who originally drafted the form agreement.

**SUPPLEMENT:** Lake Forest and French supplement their response as follows. Although interpreting the agreement is the province of the court, based upon General Chain's interpretation of the agreement and the Defendants, it appears that there is dispute as to the intended meaning of the term "achieved" contained in paragraph  7 of Loan Agreements 1 and 2. It is the position of Defendants that that term was intended to reflect that the right to a home building site would accrue once Royal Island, LLC or a wholly owned subsidiary thereof acquired Royal Island.

17.    Identify the person or persons that had any role whatsoever in drafting Loan Agreements 1 and 2, stating each person's name, address, telephone number, and role in drafting Loan Agreement I and 2.

**ANSWER:**    Albert Montano drafted Loan Agreements 1 and 2 by modifying a form agreement he had used in prior business dealings. Reasonable inquiries did not elicit the identity of who originally drafted the form agreement.

**SUPPLEMENT:** Lake Forest and French supplement their response as follows. Albert Montano's address is set forth in response to Interrogatory number 1.

18.    Identify each and every fact that supports your Second Affirmative Defense.

**ANSWER:**    See response to Interrogatory #16.

19.     Identify each and every fact that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

**ANSWER**:     Neither French, nor Montano, nor Weissman, nor Lake Forest Partners,

LLC, acquired Royal Island, LLC pursuant to Paragraph 7 of Loan Agreements 1 and 2.  On

information and belief, Plaintiff was aware of this fact or reasonably should have known that the

deal never closed based upon his dealings with the parties.

**SUPPLEMENT**:  Lake Forest and French supplement their response as follows.  French

sent Chain a memo dated August 18, 2006 on behalf of Lake Forest, in which Lake Forest stated

that it was experiencing hardship, was in the process of exploring other financing sources, and

that as a result Lake Forest could not commit to the home building sites at that time.

20.     Is it your contention and/or belief that any "of the Defendants or parties to the Loans" held a contract and/or option to purchase Royal Island? If the answer to this question is anything other than an unqualified no, then identify the date of the contract/option agreement, the parties to the contract/option agreement, whether the contract/option agreement was written or oral, and the terms of the contract/option agreement.

**ANSWER**:     None of the defendants or parties to the loans held a contract and/or option

to purchase Royal Island.

21.     Is it your contention that Lake Forest, French, GPVI and/or any other entity affiliated with French is not entitled to any lots on Royal Island? If the answer is anything other than an unqualified "yes," then identify each and every fact for your claim that Lake Forest, French, GPVI and/or any other entity affiliate with French is or are entitled to lots on Royal Island and state how many lots each such individual or entity is entitled to.

**ANSWER**:     Under the Royal Island, LLC Agreement, Lake Forest and GPVI had a

contingent right to receive lots on the island provided that Royal Island, LLC acquired Royal

Island.  Royal Island, LLC did not acquire Royal Island, and therefore those contingent rights

never vested, and neither Lake Forest, GPVI, or French have a right to an island.

9

**SUPPLEMENT**:   Assuming that the term "entitled" is also intended to refer to any conditional rights that may exist, under paragraph 11.19 of the Limited Partnership Agreement of Royal Island Partners, L.P., Royal Island, LLC presently has the right to <u>purchase</u> 4 lots on the Island. A copy of that Agreement was produced pursuant to discovery requests.

To clarify a typographical error, the final sentence in the initial Answer is "neither Lake Forest, GPVI, or French have a right to a lot on the Island."

22.     Identify each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party. For each such lawsuit and arbitration, identify the parties to the proceeding, the tribunal in which the proceeding is or was pending, the nature of the litigation and whether a judgment or award has been entered.

**ANSWER**:

Andrew Tobias v. Lake Forest, French,, Montano, Weissman, and MEA Management
        Circuit Court of Cook County
        Judgment has been entered.

Robert Moss v. Lake Forest, French, Montano, and Weissman
        Circuit Court of Cook County
        Judgment has been entered

Cynthia Craig v. Lake Forest, French, Montano, and Weissman
        Circuit Court of Cook County
        Judgment has been entered

John Borling v. Lake Forest, French, Montano, and Weissman
        Circuit Court of Winnebago County
        No Judgment has been entered

Greystone Business Credit II v. M/V Babe, Lake Forest Partners Yacht, Ltd., Lake Forest,
        French, Montano, and Weissman
        Southern District of Florida
        Judgment has been entered.

Remington Partners v. Weissman and French
        Marin County Superior Court
        No Judgment has been entered.

Duane J. Truitt v. GPVI and Lake Forest
    American Arbitration Association
    No Judgment or award has been entered.

**SUPPLEMENT**: The first four matters are actions on Loan Agreements substantially

similar to the ones at issue in the case at bar. The Greystone matter was an action to foreclose on

a yacht. The Truitt action is an arbitration between members of Lake Forest, and the relevant

pleadings have been produced. To date, French has not received the relevant pleadings in

Remington Partners.

Additionally, Defendants have just become aware of an additional matter:

Brett and Julie Scott v. Christopher French and Lake Forest Partners Yacht, Ltd.
Walworth County Circuit Court
Judgment has been entered.

The nature of this matter is presently unknown. However, investigation continues.


23.    If any of your answers to any of Plaintiff's Requests for Admission (Set 2) served
on March 10, 2008, constitute anything other than an unqualified admission, state with
particularity and in detail the complete factual basis for your refusal to give an unqualified
admission. Your answer should include, without limitation, an identification of every witness,
document, or other tangible item that supports your refusal to give an unqualified admission to
the particular Request for Admission.

**ANSWER**:    Request to Admit #17: Lake Forest had a contingent right to several lots

on the Islands. That right was contingent on Royal Island, LLC acquiring the Islands in

question. Therefore, Royal Island had a right to several lots on the Islands, but that right did not

vest because the condition precedent was not fulfilled.

Request to Admit #22: See response to Interrogatory #15.

Request to Admit #23: Lake Forest Partners, LLC did not "offer" lots on the Islands to

Chain or any other person. It offered contingent rights to lots on the Islands, with the condition

11

precedent that Royal Island, LLC succeed in acquiring the Islands. Therefore it is inaccurate to state that Lake Forest Partners, LLC "offered" lots on the Islands to Chain, or to others.

### SUPPLEMENT:

Request to Admit #17: Lake Forest and French did not admit this request because the term "direct right" was undefined and ambiguous. It was unclear whether a contingent right was the same thing as a "direct right."

Request to Admit #20: Royal Island, LLC is a Limited Partner in a limited partnership named Royal Island Partners, LP that owns Royal Island.

Request to Admit #21: Royal Island was acquired pursuant to an agreement that GPVI assigned to Royal Island, LLC, and that Royal Island, LLC subsequently assigned to Royal Island Partners, LP.

Request to Admit #22: Lake Forest and French denied this request because the term "entitled" was undefined and ambiguous. It was unclear whether Royal Island's right to purchase four lots was an "entitlement" as contemplated by the request.

### DOCUMENT REQUESTS

1.    Produce all documents that are referred to or were used in any manner whatsoever to answer the foregoing interrogatories and/or answering the Complaint.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

2.    Produce all documents that Lake Forest and/or French will use at any trial or hearing of this matter.

12

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

3.    Produce any and all documents relating to each and every financial account of
Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French,
including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), for the time period January 1,
2004 to the present, including, all account statements, checks, cancelled checks, ledgers, check
registers, and accounting records. This request specifically includes a request for all
electronically stored information and General Chain requests that Lake Forest and French
produce the native files for all such electronically stored information.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

4.    Produce any and all documents relating to each and every use of the money lent
by General Chain to Lake Forest.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

5.    Produce any and all documents relating to any and all communications between
Lake Forest (and its agents) and General Chain.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

6.    Produce any and all documents relating to each and every person or entity that has
been offered or promised (whether such offer was contingent or not) a lot or lots on Royal Island
by Lake Forest, French, GPVI and/or persons acting on behalf of Lake Forest, French and/or
GPVI.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

7.    Produce any and all documents relating to any communications between French
and/or Lake Forest (and their agents or attorneys), on the one hand, and any law enforcement

agency, on the other hand, regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

8.    Produce any and all documents relating to Lake Forest's and French's claim that they had authority to promise General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

9.    Produce any and all documents relating to the acquisition of Royal Island.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

10.    Produce any and all documents relating to the solicitation of any and all loans to Lake Forest and/or GPVI.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

11.    Produce any and all documents relating to the solicitation of any and all investments in Lake Forest and/or GPVI or any real estate projects that are or were affiliated in any way with Lake Forest, French and/or GPVI.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

12.    Produce any and all documents relating to any and all communications between Lake Forest, French and/or GPVI (and their agents and attorneys), on the one hand, and any and all persons and/or entities that loaned money to Lake Forest, GPVI and/or French and/or invested money in Lake Forest, GPVI and/or any real estate project affiliated in any way whatsoever with Lake Forest and/or GPVI.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

13.    Produce any and all documents regarding all agreements to which Lake Forest, French, and/or GPVI are or were a party that in any way relate to Royal Island.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

14.    Produce any and all documents that support your contention that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

15.    Produce any and all documents that support Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

16.    Produce any and all documents that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

17.    Produce any and all documents that refer or relate to any and all creditors of Lake Forest, French, GPVI and/or any other entities in which French has or had an ownership interest, including, but not limited to, documents relating to the identity of each creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

18.    Produce any and all documents relating to the repayment by (or on behalf of) Lake Forest, French, GPVI and/or any entity affiliated with French to any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

19.    Produce any and all documents that relate to the proposed and/or actual acquisition of Royal Island.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

20.    Produce any and all documents that support your contention that the acquisition of Royal Island was not achieved.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

21.    Produce any and all documents that support your contention that certain terms of Loan Agreement 1 and Loan Agreement 2 are "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

22.    Produce any and all documents relating to the drafting of Loan Agreements 1 and 2.

**ANSWER:**    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

16

23.　　Produce any and all documents that support your Second Affirmative Defense.

**ANSWER**:　　Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

24.　　Produce any and all documents that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

**ANSWER**:　　Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

25.　　Produce any and all documents relating to any and all disputes between, Lake Forest, French, GPVI and/or any other entity affiliated with French, on the one hand, and Duane Truitt, on the other hand.

**ANSWER**:　　Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

26.　　Produce any and all documents relating to whether Lake Forest, French, GPVI and/or any other entity affiliate with French has or have ever been entitled to lots on Royal Island and state how many lots each such person and/or entity is entitled to.

**ANSWER**:　　Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

27.　　Produce any and all documents relating to each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party, including, but not limited to, all pleadings, discovery, produced documents and deposition transcripts.

**ANSWER**:　　Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

28.　　Produce any and all deposition transcripts, recorded statements, transcripts of testimony of French, Weissman and/or Montano.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


                              LAKE FOREST PARTNERS, LLC AND
                              CHRISTOPHER T. FRENCH


                              _____
                              One of Their Attorneys


                              I verify under penalty of perjury that the foregoing
                              is true and correct.


                              _____
                                   Christopher French
                                   Lake Forest Partners, LLC

Louis D. Bernstein
Lorne T. Saeks
Christopher J. Petelle
**MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000


18

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


LAKE FOREST PARTNERS, LLC AND
CHRISTOPHER T. FRENCH


_____

One of Their Attorneys


I verify under penalty of perjury that the foregoing
is true and correct.

_____
Christopher French
Lake Forest Partners, LLC


Louis D. Bernstein
Lorne T. Sacks
Christopher J. Petelle
**MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000


18

## CERTIFICATE OF SERVICE

I, Christopher J. Petelle, an attorney, certify that a copy of the foregoing **Supplemental Answers to Plaintiff's Interrogatories and Requests for Production of Documents (Set 1) to Defendant Lake Forest Partners, LLC**, was served via email and U.S. mail on the 6th day of June, 2008, on the following parties:

Jonathan M. Cyrluk
Henry Baskerville
Stetler & Duffy, Ltd.
11 South LaSalle Street
Suite 1200
Chicago, IL 60603
cyrlukj@stetlerandduffy.com
Hbaskerville@stetlerandduffy.com

Barry Greenburg
Law Offices of Barry H. Greenburg
180 N. LaSalle St.
Chicago, IL  60601-2501
bhgreenburg@hotmail.com


_____
Christopher J. Petelle

Exhibit 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GENERAL JOHN T. CHAIN, JR.,** | ) | |
| **(USAF, Retired),** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 07 C 6317** |
| | ) | |
| **v.** | ) | **Honorable Ronald A. Guzman** |
| | ) | |
| **LAKE FOREST PARTNERS, LLC,** | ) | |
| **A Nevada Corporation; CHRISTOPHER** | ) | |
| **T. FRENCH, ALBERT J. MONTANO** | ) | |
| **and MARK D. WEISSMAN, M.D.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SUPPLEMENTAL ANSWERS TO PLAINTIFF'S INTERROGATORIES AND**
**REQUESTS FOR PRODUCTION OF DOCUMENTS (SET 1) TO DEFENDANT**
**LAKE FOREST PARTNERS, LLC**

Defendants French and Lake Forest Partners, LLC by and through its attorneys, and submit their Supplemental Answers to Plaintiff's Interrogatories and Requests for Production of Documents (Set 1):

**INTERROGATORIES**

1.    Identify each and every person who provided information that was used in the preparation of the answers to these Interrogatories and Request for the Production of Documents, stating each person's name, address, telephone number and a description of the information provided.

**ANSWER**:    Christopher French, who resides at 739 Timber Ridge, Fontana,

Wisconsin, 53125; and Albert Montano, who resides at 249 Market Square, Lake Forest, IL

60045.

2.    Identify each and every person who Lake Forest and/or French may call as a witness at any hearing or trial relating to this case, stating each person's name, address, telephone number and a description of the testimony each person would provide.

**ANSWER**:    Defendants do not yet know who they may call at trial in this cause.

However, Defendants may call Christopher French, Albert Montano, Mark Weissman, and

Warren Stamm. Each of these four individuals has knowledge regarding the "Loan Agreements" in question, as well as the development of Royal Island. Lake Forest and French reserve the right to supplement their response to this interrogatory as trial approaches.

3.    Identify each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), identifying the name of the financial institution, the address of the financial institution, the name of the account holder, the account numbers and the purpose of each account.

**ANSWER**:    Christopher French has joint personal checking account with his wife at LaSalle Bank, identified by account number DDA 5305689969. Lake Forest and GPVI no longer maintain open accounts.

**SUPPLEMENT**:    Lake Forest held checking accounts at Harris Bank, identified by account number 2910373329 and account number 4800302390, as well as a checking account at Lake Forest Bank and Trust identified by account number 0000421375.

GPVI held checking accounts at JP Morgan Chase Bank, N.A. identified by account number 001115001646880, account number 000000652734542, account number 000000652734492; and account number 000000652734591.

See also account statements, which have already been produced, which provide the address of the financial institutions in question .

4.    Identify each and every use of the money lent by General Chain to Lake Forest, identifying the amount of each expenditure that was made in whole, or in part, with money lent by General Chain, the date of the expenditure, the nature of the expenditure, the recipient of the expenditure, and the purpose of the expenditure. This interrogatory specifically requires French and Lake Forest to trace each and every dollar that General Chain lent to Lake Forest.

**ANSWER**:  The money lent by Chain to Lake Forest was placed into a common fund and intermingled with funds provided by other investors and lenders.  Therefore, when money was spent, it is impossible to identify with particularity which moneys were those lent specifically by Chain, and which funds were provided to Lake Forest by other sources.  In short, it is not possible to specifically trace the funds transferred to Lake Forest by General Chain.

All funds expended by Lake Forest were used for Royal Island-related projects and expenditures.  Financial statements are currently in process by a Certified Public Accountant.  Draft financial statements provided by Lake Forest's in-house accountant are being produced pursuant to the document production requests.

**SUPPLEMENT**:  All funds lent by General Chain were used for Royal Island related projects.

5.     Identify each and every person or entity that has been offered or promised (whether such offers were contingent or not) a lot or lots on Royal Island. For each such offer or promise, state the name of each offeree, the date of each offer, whether the offer was in writing or oral, the terms of the offer or promise, whether the offer or promise was accepted and the date the offer or promise was accepted.

**ANSWER**:    The following persons were offered lots, contingent upon the successful acquisition of Royal Island:  John Borling; General Chain; Tobias; Randy Miles; and each member of Royal Island, LLC.  The dates and terms of such offers are contained in the documents being produced in response to Plaintiff's request to produce documents.

**SUPPLEMENT**:  No oral solicitations or offers of lots or contingent rights to lots were made.

3

**SECOND SUPPLEMENT**:  The following parties were offered contingent rights to lots on Royal Island:

John Borling – Agreement memorialized on August 7, 2005.

Jack Chain – Documents heretofore referred to as "Loan Agreements 1 and 2"

Duane Truitt, GVPI, and Lake Forest – pursuant to an oral agreement between Duane Truitt, GVPI, and Lake Forest.  Furthermore, it was the original intent of the members of Lake Forest that each member would receive one of the three lots allocated to Lake Forest.

Randy Miles – Agreement memorialized on November 3, 2005

Andrew P. Tobias – Agreement memorialized on 12/1/05, granting Tobias a contingent right to a 10-year option to purchase a lot at a reduced rate.

Lake Forest and French have produced the written agreements described above.

6.     Has French and/or Lake Forest been contacted by any law enforcement agency regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project? If the answer is anything other than an unqualified "no," then for each such contact, state the date of the contact, the agency making contact and the information provided by French and/or Lake Forest to all law enforcement agencies.

**ANSWER**:    No.

7.     State with particularity each and every fact that supports Lake Forest's and French's claim that they had authority to promise (even on a contingent basis) General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

**ANSWER**:     The Royal Island, LLC Agreement allocated four lots to Lake Forest on a contingent basis, to be transferred to Lake Forest on the successful acquisition of Royal Island.

4

**SUPPLEMENT**: Pursuant to an oral agreement with Truitt, the other member of Royal Island, LLC, Lake Forest held the contingent right to three lots which it would receive upon the acquisition of Royal Island.

8.    Was Lake Forest ever party to an agreement or agreements whereby it would acquire Royal Island? If the answer is anything other than an unqualified no, then state the parties to the agreement(s), the date of the agreement, whether the agreement(s) was (were) in writing or oral, and the terms of the agreement(s).

**ANSWER**:    No.

9.    State with particularity each and every fact that supports Lake Forest's and French's claim that Lake Forest did not ask General Chain to make an initial loan of $3 million to Lake Forest.

**ANSWER**:    On information and belief, John Borling solicited General Chain's participation; Lake Forest did not.

**SUPPLEMENT**: John Borling had an agreement with Lake Forest whereby he agreed to help Lake Forest find individuals willing to make loans. In exchange, Borling received, *inter alia*, a contingent right to a lot on the Island.

10.    State with particularity each and every fact that supports Lake Forest's and French's claim that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint, including the date(s) of General Chain's offer(s), the person(s) to whom General Chain allegedly made the offer(s), whether the offer(s) were in writing or oral, and the terms of the offer(s).

**ANSWER**:    As part of a verbal discussion between Chain and Montano, Chain agreed to make a loan after discussions regarding the same with Montano.

**SUPPLEMENT**:  Albert Montano initially solicited a second loan of $500,000 from General Chain.  General Chain offered to make that additional loan, and Lake Forest Partners accepted.

11.    State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

**SUPPLEMENTAL ANSWER**:  It is the position of Defendants that Loan Agreement 1, as interpreted by Chain, is not valid and enforceable.  Although the interpretation of the agreement is the province of the Court, General Chain's interpretation of the contract -- that he has an unconditional right to a lot on the island -- is not reflected by the parties' agreement, and therefore is not valid or enforceable as a matter of law.

**SECOND SUPPLEMENT**:  Chain's complaint states that "Defendants promised General Chain that he would receive two home building sites on the Island, each worth between $2 Million and $3 Million." (Chain Compl., ¶)  Defendants interpret that paragraph of the complaint to mean that Chain asserts that he held an unconditional, non-contingent right to two home building sites on the Island.  Defendants contend that that interpretation of the contract is not enforceable.  Defendants assert that Chain held a contingent right to two building sites on the Island, and that the contingency never occurred.

12.    State with particularity each and every fact that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

**SUPPLEMENTAL ANSWER**:  It is the position of Defendants that Loan Agreement 2, as interpreted by Chain, is not valid and enforceable.  Although the interpretation of the agreement is the province of the Court, General Chain's interpretation of the contract -- that he

has an unconditional right to a lot on the island -- is not reflected by the parties' agreement, and

therefore is not valid or enforceable as a matter of law.

**SECOND SUPPLEMENT**:  Chain's complaint states that "Defendants promised

General Chain that he would receive two home building sites on the Island, each worth between

$2 Million and $3 Million." (Chain Compl., ¶)  Defendants interpret that paragraph of the

complaint to mean that Chain asserts that he held an unconditional, non-contingent right to two

home building sites on the Island.  Defendants contend that that interpretation of the contract is

not enforceable.  Defendants assert that Chain held a contingent right to two building sites on the

Island, and that the contingency never occurred.

13.    Identify all persons or entities that are creditors of Lake Forest, French, GPVI
and/or any other entities in which French has an ownership interest. For each creditor identified,
state the name of the creditor, the amount of the creditors' claim, any amounts that have been
paid to the creditor, the date of such payment(s), the source of funds that have been used to
reduce the creditor's claim, the nature of the creditor's claim *(i.e.,* whether for money lent,
money invested, services provided, etc.)

**ANSWER**:    As previously stated in response to interrogatory 4, financial statements

for Lake Forest, French, and GPVI are currently in process by a Certified Public Accountant.

Draft financial statements provided by Lake Forest's in-house accountant are being produced

pursuant to the document production requests.

Lake Forest's creditors include, but are not limited to, Cynthia Craig, Tobias, and Moss.

French's creditors include, but are not limited to, Visa, Mastercard, and American

Express.  Mr. French does not currently have a mortgage.

French has an ownership interest in an entity known as TEC Development. TEC has a

number of creditors related to the Biscayne Bay development project, as well as IRS tax liens

involved with that project.

**SUPPLEMENT**: Lake Forest and French have produced financial statements and bank

records which indicate to whom Lake Forest and GVPI are indebted. TEC Development is

currently involved in mechanics lien litigation in Florida, and counsel for French has yet to

obtain the relevant pleadings, so it is unclear to whom TEC Development is potentially indebted.

However, investigation continues.

14.     Was any of the money that Lake Forest obtained from General Chain used to pay
any other person or entity that loaned money to, or invested money with, Lake Forest, French,
GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI? If the answer is
anything other than an unqualified "no," then state the name of the lender/investor, the amount of
money that was repaid to the lender/investor, the date of repayment of the lender/investor, the
method of payment (*i.e.*, cash, check, wire transfer, etc.), and the financial institution from which
the money was used to pay the lender/investor.

**ANSWER**:     As previously stated in response to Interrogatory 4, the money lent by

Chain to Lake Forest was placed into a common fund and intermingled with funds provided by

other investors and lenders. Therefore it is impossible to determine which moneys spent on

behalf of Lake Forest came from which funding sources.

15.     Identify each and every fact that supports your claim that the acquisition of Royal
Island was not achieved.

**ANSWER**:     Royal Island, LLC did not acquire Royal Island, pursuant to Paragraph 7

of Loan Agreements 1 and 2.

**SUPPLEMENT**: Lake Forest and French supplement their response as follows. It was

the intent of the parties, when they entered into the contract, that Royal Island, LLC or a wholly

owned subsidiary thereof would acquire Royal Island. Neither Royal Island, LLC nor a wholly owned subsidiary thereof acquired Royal Island.

16.    Identify each and every term of Loan Agreement 1 and Loan Agreement 2 that you claim is "indefinite, unclear and do not provide the court with the means of determining the intent of the parties." For each such term, state: (1) your interpretation of such term and what you believe was the intent of such term; and (2) the person who drafted each term.

**ANSWER**:    Albert Montano drafted Loan Agreements 1 and 2 by modifying a form agreement he had used in prior business dealings. Reasonable inquiries did not elicit the identity of who originally drafted the form agreement.

**SUPPLEMENT**: Lake Forest and French supplement their response as follows. Although interpreting the agreement is the province of the court, based upon General Chain's interpretation of the agreement and the Defendants, it appears that there is dispute as to the intended meaning of the term "achieved" contained in paragraph 7 of Loan Agreements 1 and 2. It is the position of Defendants that that term was intended to reflect that the right to a home building site would accrue once Royal Island, LLC or a wholly owned subsidiary thereof acquired Royal Island.

17.    Identify the person or persons that had any role whatsoever in drafting Loan Agreements 1 and 2, stating each person's name, address, telephone number, and role in drafting Loan Agreement I and 2.

**ANSWER**:    Albert Montano drafted Loan Agreements 1 and 2 by modifying a form agreement he had used in prior business dealings. Reasonable inquiries did not elicit the identity of who originally drafted the form agreement.

**SUPPLEMENT**: Lake Forest and French supplement their response as follows. Albert Montano's address is set forth in response to Interrogatory number 1.

18.    Identify each and every fact that supports your Second Affirmative Defense.

**ANSWER**:    See response to Interrogatory #16.


19.    Identify each and every fact that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

**ANSWER**:    Neither French, nor Montano, nor Weissman, nor Lake Forest Partners, LLC, acquired Royal Island, LLC pursuant to Paragraph 7 of Loan Agreements 1 and 2.  On information and belief, Plaintiff was aware of this fact or reasonably should have known that the deal never closed based upon his dealings with the parties.

**SUPPLEMENT**:  Lake Forest and French supplement their response as follows.  French sent Chain a memo dated August 18, 2006 on behalf of Lake Forest, in which Lake Forest stated that it was experiencing hardship, was in the process of exploring other financing sources, and that as a result Lake Forest could not commit to the home building sites at that time.

**SECOND SUPPLEMENT**:    It is Defendants' position, as stated in their third affirmative defense, that Chain was aware at the time that he entered into Loan Agreements 1 and 2 that neither Lake Forest nor Royal Island, LLC had yet acquired Royal Island.  Pursuant to Paragraphs 7 of the Loan Agreements, the acquisition of Royal Island first had to be achieved before Chain's rights vested or accrued.


20.    Is it your contention and/or belief that any "of the Defendants or parties to the Loans" held a contract and/or option to purchase Royal Island? If the answer to this question is anything other than an unqualified no, then identify the date of the contract/option agreement, the parties to the contract/option agreement, whether the contract/option agreement was written or oral, and the terms of the contract/option agreement.

**ANSWER**:    None of the defendants or parties to the loans held a contract and/or option to purchase Royal Island.

21.    Is it your contention that Lake Forest, French, GPVI and/or any other entity affiliated with French is not entitled to any lots on Royal Island? If the answer is anything other than an unqualified "yes," then identify each and every fact for your claim that Lake Forest, French, GPVI and/or any other entity affiliate with French is or are entitled to lots on Royal Island and state how many lots each such individual or entity is entitled to.

**ANSWER**:    Under the Royal Island, LLC Agreement, Lake Forest and GPVI had a contingent right to receive lots on the island provided that Royal Island, LLC acquired Royal Island. Royal Island, LLC did not acquire Royal Island, and therefore those contingent rights never vested, and neither Lake Forest, GPVI, or French have a right to an island.

**SUPPLEMENT**:    Assuming that the term "entitled" is also intended to refer to any conditional rights that may exist, under paragraph 11.19 of the Limited Partnership Agreement of Royal Island Partners, L.P., Royal Island, LLC presently has the right to <u>purchase</u> 4 lots on the Island. A copy of that Agreement was produced pursuant to discovery requests.

To clarify a typographical error, the final sentence in the initial Answer is "neither Lake Forest, GPVI, or French have a right to a lot on the Island."

22.    Identify each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party. For each such lawsuit and arbitration, identify the parties to the proceeding, the tribunal in which the proceeding is or was pending, the nature of the litigation and whether a judgment or award has been entered.

**ANSWER**:

Andrew Tobias v. Lake Forest, French,, Montano, Weissman, and MEA Management
    Circuit Court of Cook County
    Judgment has been entered.

Robert Moss v. Lake Forest, French, Montano, and Weissman

11

Circuit Court of Cook County
Judgment has been entered

Cynthia Craig v. Lake Forest, French, Montano, and Weissman
Circuit Court of Cook County
Judgment has been entered

John Borling v. Lake Forest, French, Montano, and Weissman
Circuit Court of Winnebago County
No Judgment has been entered

Greystone Business Credit II v. M/V Babe, Lake Forest Partners Yacht, Ltd., Lake Forest,
French, Montano, and Weissman
Southern District of Florida
Judgment has been entered.

Remington Partners v. Weissman and French
Marin County Superior Court
No Judgment has been entered.

Duane J. Truitt v. GPVI and Lake Forest
American Arbitration Association
No Judgment or award has been entered.

**SUPPLEMENT**: The first four matters are actions on Loan Agreements substantially similar to the ones at issue in the case at bar. The Greystone matter was an action to foreclose on a yacht. The Truitt action is an arbitration between members of Lake Forest, and the relevant pleadings have been produced. To date, French has not received the relevant pleadings in Remington Partners.

Additionally, Defendants have just become aware of an additional matter:

Brett and Julie Scott v. Christopher French and Lake Forest Partners Yacht, Ltd.
Walworth County Circuit Court
Judgment has been entered.

The nature of this matter is presently unknown. However, investigation continues.


23.    If any of your answers to any of Plaintiff's Requests for Admission (Set 2) served on March 10, 2008, constitute anything other than an unqualified admission, state with particularity and in detail the complete factual basis for your refusal to give an unqualified

12

admission. Your answer should include, without limitation, an identification of every witness, document, or other tangible item that supports your refusal to give an unqualified admission to the particular Request for Admission.

**ANSWER**:    Request to Admit #17:  Lake Forest had a contingent right to several lots on the Islands.  That right was contingent on Royal Island, LLC acquiring the Islands in question.  Therefore, Royal Island had a right to several lots on the Islands, but that right did not vest because the condition precedent was not fulfilled.

Request to Admit #22:  See response to Interrogatory #15.

Request to Admit #23:  Lake Forest Partners, LLC did not "offer" lots on the Islands to Chain or any other person.  It offered contingent rights to lots on the Islands, with the condition precedent that Royal Island, LLC succeed in acquiring the Islands.  Therefore it is inaccurate to state that Lake Forest Partners, LLC "offered" lots on the Islands to Chain, or to others.

**SUPPLEMENT**:

Request to Admit #17:  Lake Forest and French did not admit this request because the term "direct right" was undefined and ambiguous.  It was unclear whether a contingent right was the same thing as a "direct right."

Request to Admit #20:  Royal Island, LLC is a Limited Partner in a limited partnership named Royal Island Partners, LP that owns Royal Island.

Request to Admit #21:  Royal Island was acquired pursuant to an agreement that GPVI assigned to Royal Island, LLC, and that Royal Island, LLC subsequently assigned to Royal Island Partners, LP.

Request to Admit #22:  Lake Forest and French denied this request because the term "entitled" was undefined and ambiguous.  It was unclear whether Royal Island's right to purchase four lots was an "entitlement" as contemplated by the request.

## DOCUMENT REQUESTS

1.     Produce all documents that are referred to or were used in any manner whatsoever to answer the foregoing interrogatories and/or answering the Complaint.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

2.     Produce all documents that Lake Forest and/or French will use at any trial or hearing of this matter.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

3.     Produce any and all documents relating to each and every financial account of Lake Forest, French and/or any persons or entities affiliated with Lake Forest and/or French, including, but not limited to Great Prairie Ventures, Inc. ("GPVI"), for the time period January 1, 2004 to the present, including, all account statements, checks, cancelled checks, ledgers, check registers, and accounting records. This request specifically includes a request for all electronically stored information and General Chain requests that Lake Forest and French produce the native files for all such electronically stored information.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

4.     Produce any and all documents relating to each and every use of the money lent by General Chain to Lake Forest.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

14

5.    Produce any and all documents relating to any and all communications between Lake Forest (and its agents) and General Chain.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

6.    Produce any and all documents relating to each and every person or entity that has been offered or promised (whether such offer was contingent or not) a lot or lots on Royal Island by Lake Forest, French, GPVI and/or persons acting on behalf of Lake Forest, French and/or GPVI.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

7.    Produce any and all documents relating to any communications between French and/or Lake Forest (and their agents or attorneys), on the one hand, and any law enforcement agency, on the other hand, regarding their solicitations for loans and/or investments in any real estate projects, including, but not limited to, the Royal Island project.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

8.    Produce any and all documents relating to Lake Forest's and French's claim that they had authority to promise General Chain the lots on Royal Island referenced in Loan Agreement 1 and Loan Agreement 2.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

9.    Produce any and all documents relating to the acquisition of Royal Island.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

10.    Produce any and all documents relating to the solicitation of any and all loans to Lake Forest and/or GPVI.

15

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

11.    Produce any and all documents relating to the solicitation of any and all investments in Lake Forest and/or GPVI or any real estate projects that are or were affiliated in any way with Lake Forest, French and/or GPVI.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

12.    Produce any and all documents relating to any and all communications between Lake Forest, French and/or GPVI (and their agents and attorneys), on the one hand, and any and all persons and/or entities that loaned money to Lake Forest, GPVI and/or French and/or invested money in Lake Forest, GPVI and/or any real estate project affiliated in any way whatsoever with Lake Forest and/or GPVI.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

13.    Produce any and all documents regarding all agreements to which Lake Forest, French, and/or GPVI are or were a party that in any way relate to Royal Island.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

14.    Produce any and all documents that support your contention that "Chain offered to make an additional loan to Lake Forest for use by Lake Forest for its business activities, which included aspects of the marketing and development of Royal Island" as set forth in your answer to paragraph 21 of the Complaint.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

15.    Produce any and all documents that support Lake Forest's and French's claim that Loan Agreement 1 is not valid and enforceable.

16

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


16.    Produce any and all documents that supports Lake Forest's and French's claim that Loan Agreement 2 is not valid and enforceable.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


17.    Produce any and all documents that refer or relate to any and all creditors of Lake Forest, French, GPVI and/or any other entities in which French has or had an ownership interest, including, but not limited to, documents relating to the identity of each creditor, the amount of the creditors' claim, any amounts that have been paid to the creditor, the date of such payment(s), the source of funds that have been used to reduce the creditor's claim, the nature of the creditor's claim (*i.e.*, whether for money lent, money invested, services provided, etc.)

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


18.    Produce any and all documents relating to the repayment by (or on behalf of) Lake Forest, French, GPVI and/or any entity affiliated with French to any other person or entity that loaned money to, or invested money with, Lake Forest, French, GPVI and/or any other entity affiliated with Lake Forest, French and/or GPVI.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


19.    Produce any and all documents that relate to the proposed and/or actual acquisition of Royal Island.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


20.    Produce any and all documents that support your contention that the acquisition of Royal Island was not achieved.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

21.    Produce any and all documents that support your contention that certain terms of Loan Agreement 1 and Loan Agreement 2 are "indefinite, unclear and do not provide the court with the means of determining the intent of the parties."

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

22.    Produce any and all documents relating to the drafting of Loan Agreements 1 and 2.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

23.    Produce any and all documents that support your Second Affirmative Defense.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

24.    Produce any and all documents that supports your contention that "[d]efendants made clear, and Plaintiff knew, that none of the Defendants or parties to the Loans acquired Royal Island."

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

25.    Produce any and all documents relating to any and all disputes between, Lake Forest, French, GPVI and/or any other entity affiliated with French, on the one hand, and Duane Truitt, on the other hand.

**ANSWER**:    Lake Forest and French will produce all responsive, non-privileged documents as are in their possession or control.

26.     Produce any and all documents relating to whether Lake Forest, French, GPVI and/or any other entity affiliate with French has or have ever been entitled to lots on Royal Island and state how many lots each such person and/or entity is entitled to.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


27.     Produce any and all documents relating to each and every lawsuit or arbitration proceeding in which Lake Forest, French and/or GPVI is or has been a party, including, but not limited to, all pleadings, discovery, produced documents and deposition transcripts.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.


28.     Produce any and all deposition transcripts, recorded statements, transcripts of testimony of French, Weissman and/or Montano.

**ANSWER**:     Lake Forest and French will produce all responsive, non-privileged

documents as are in their possession or control.

LAKE FOREST PARTNERS, LLC AND
CHRISTOPHER T. FRENCH


_____
One of Their Attorneys


I verify under penalty of perjury that the foregoing
is true and correct.


_____
Christopher French
Lake Forest Partners, LLC


Louis D. Bernstein
Lorne T. Saeks
Christopher J. Petelle
**MUCH SHELIST DENENBERG AMENT & RUBENSTEIN, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
312.521.2000

## CERTIFICATE OF SERVICE

I, Christopher J. Petelle, an attorney, certify that a copy of the foregoing **Supplemental Answers to Plaintiff's Interrogatories and Requests for Production of Documents (Set 1) to Defendant Lake Forest Partners, LLC**, was served via email and U.S. mail on the 12th day of June, 2008, on the following parties:

Jonathan M. Cyrluk
Henry Baskerville
Stetler & Duffy, Ltd.
11 South LaSalle Street
Suite 1200
Chicago, IL 60603
cyrlukj@stetleranduddy.com
Hbaskerville@stetleranduddy.com

Barry Greenburg
Law Offices of Barry H. Greenburg
180 N. LaSalle St.
Chicago, IL  60601-2501
bhgreenburg@hotmail.com


_____
Christopher J. Petelle